

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00301-CV

CLAYTON NEWELL                                                    APPELLANT

V.

CHRISTINA N. NEWELL                                              APPELLEE

----------

## FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

### I. INTRODUCTION

This is an appeal from a divorce decree that orders Appellant Clayton Newell to pass random drug and alcohol testing in order to be entitled to unrestricted possession of his daughter. In two issues, Clayton argues that the trial court abused its discretion by ordering the random alcohol testing and that the restriction exceeds that required to protect the best interest of his daughter. We will modify the trial court's judgment to delete the requirement that Clayton

submit to random alcohol testing and affirm the trial court's judgment, including the random drug tests, as modified.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Clayton married Appellee Christina N. Newell in May 2003. During the marriage, Clayton and Christina had one child, N.A.N. (Natalie).[1]

Clayton used drugs as a teenager, and he began abusing drugs in the fall of 2007 when his younger brother died. Clayton went to outpatient rehabilitation in May 2009, and he and Christina separated in June 2009. The next month, Clayton filed a petition for divorce. He asked that he and Christina be appointed joint managing conservators of Natalie. A few days later, Christina filed a counterpetition in which she requested sole managing conservatorship of Natalie and asked the trial court to enter all orders that the court found to be in Natalie's best interests. The trial court entered temporary orders, which included making Clayton's possession of Natalie contingent upon him passing drug tests that Christina was required to pay for.

In July 2010, the parties agreed to have permanent joint managing conservatorship of Natalie, with Christina serving as her primary caregiver and Clayton having scheduled possession rights. Through a written agreement,[2] the

---

[1]To protect Natalie's identity, we will use an alias. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2008). The divorce decree states that Christina gave birth to Natalie on November 22, 2005.

[2]*See* Tex. R. Civ. P. 11.

parties decided to submit to the trial court "the one remaining issue regarding the divorce decree; specifically whether drug testing ends at 5 years or if [Clayton] is still unemployed if it will continue once a year until he is gainfully employed."

At trial, Clayton presented evidence of drug tests that he passed in July 2009, August 2009, September 2009, December 2009, and June 2010; a July 2009 urine test was negative for all drugs tested, but the hair follicle test of the same day was positive for opiates and cocaine. Clayton testified that his sobriety date was June 2009 and that he had stopped using drugs more than a year before the July 2010 trial began. He admitted that he has stopped attending Narcotics Anonymous meetings because he does not own a vehicle.

Regarding his alcohol use, Clayton testified that he drinks alcohol (including during communion at his church), that he has abused alcohol in the past, but that he has never been addicted to alcohol. He said that he was not, at the time of trial, drinking in excess to the point of intoxication. Clayton testified that it was fair for the trial court to subject him to random drug tests and to enjoin him and Christina from drinking alcohol during or within twelve hours before either of them possessed Natalie. However, he said that he did not think it was fair to be subjected to alcohol testing concurrently with the drug tests because "it is legal to consume alcohol in the privacy in [his] home, in a restaurant[,] or in any other social context. It's too intrusive." Clayton said that he would never drink around Natalie.

3

Christina testified that Clayton had "been high" around Natalie in the past and expressed concern that he would return to using drugs. She explained that he had used prescription painkillers "to excess" and had smoked marijuana on a few occasions while he was on parole in 2007. In response to a question from the trial court about why she wanted Clayton to also be tested for alcohol consumption, Christina said, "Because I know from past experience living with him that he does have an issue with alcohol abuse. My daughter numerous times comes home from her weekends with him and state[s] that he drinks."

The final divorce decree orders Clayton to submit to random alcohol tests (concurrently with the drug tests) up to three times per year for five years; the alcohol tests will determine whether he has consumed alcohol within the eighty hours preceding the tests and must occur within twelve hours of his possession of Natalie. Christina must pay for the tests as long as Clayton continues to test negative. The tests must be completed on the same day that a testing facility notifies Clayton that he is required to take them. If Clayton fails to appear for a test or tests positive for using drugs or alcohol, Clayton's periods of possession of Natalie are modified and restricted.[3]

---

[3]The divorce decree states that if Clayton provides negative drug and alcohol tests and lives within 100 miles of Natalie, he may possess Natalie, among other agreed times, during some weekends, for two hours each Thursday during the school term, during spring break in even-numbered years, for thirty days during the summer, and during some holidays. If he tests positive, he may exercise only ten hours of supervised possession every other Saturday. Once he tests positive, he must provide three negative tests within a ninety-day period to again be entitled to unrestricted possession rights.

Clayton filed a motion for new trial, contending that the evidence is legally and factually insufficient to support the trial court's decision to require him to submit to alcohol testing; he does not contest the drug testing. At a hearing on Clayton's motion, the trial court offered to modify the random alcohol testing provision if Clayton agreed to wear a SCRAM device while he has possession of Natalie, provided that he pay all costs of the device. Clayton declined, the court denied Clayton's motion, and he brought this appeal.

### III. RANDOM ALCOHOL TESTING

In two issues, Clayton contends that the trial court abused its discretion by ordering him to be tested for alcohol consumption because the order is not based on factually sufficient evidence and because the restriction exceeds that required to protect Natalie's best interests.[4]

### A. Standard of review

We review the trial court's decisions on custody, control, possession, and visitation matters for an abuse of discretion. *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.); *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re W.M.*, 172 S.W.3d 718, 724 (Tex. App.—Fort Worth 2005, no pet.). To determine whether a trial court abused its discretion, we must

---

[4]Christina argues on appeal that because the parties entered into a valid, signed Rule 11 agreement, the only issue before the trial court was whether Clayton's random drug testing should continue beyond a five-year period. The alcohol testing issue, however, was tried by consent at trial. *See* Tex. R. Civ. P. 67; *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991).

5

decide whether the court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *M.M.M.*, 307 S.W.3d at 849; *see Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *W.M.*, 172 S.W.3d at 725.

In our review of a child custody ruling under the abuse of discretion standard, legal and factual sufficiency are not independent grounds of error but are relevant factors in deciding whether the trial court abused its discretion*. In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *see W.M.*, 172 S.W.3d at 725. In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion. *M.M.M.*, 307 S.W.3d at 849; *W.M.*, 172 S.W.3d at 725; *T.D.C.*, 91 S.W.3d at 872. "The traditional sufficiency review comes into play with regard to the first question. With regard to the second question, we determine, based on the elicited evidence, whether the trial court made a reasonable decision." *W.M.*, 172 S.W.3d at 725 (footnote omitted).

### B.  Law on Restrictions on a Parent's Right of Possession

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002 (West 2008); *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002); *M.M.M.*, 307 S.W.3d at 850. There is a rebuttable

presumption that the standard possession order provides reasonable minimum possession for a parent named as a joint managing conservator and is in the child's best interest. Tex. Fam. Code Ann. § 153.252 (West 2008).

If special circumstances make the standard possession order unworkable or inappropriate, however, "[t]he court shall render an order that grants periods of possession of the child as similar as possible to those provided by the standard possession order." *Id.* § 153.253 (West 2008); *see In re J.E.P.*, 49 S.W.3d 380, 385 & n.15 (Tex. App.—Fort Worth 2000, no pet.). In deviating from the standard possession order, the trial court may consider the age, developmental status, circumstances, needs, and best interest of the child; the circumstances of the managing conservators; and any other relevant factor. Tex. Fam. Code Ann. § 153.256 (West 2008); *J.E.P.*, 49 S.W.3d at 387. An order that imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed terms that are required to protect the best interests of the child. Tex. Fam. Code Ann. § 153.193 (West 2008); *see M.M.M.*, 307 S.W.3d at 854; *see also In re J.S.P.*, 278 S.W.3d 414, 419 (Tex. App.—San Antonio 2008, no pet.) ("[A] trial court's ultimate goal is to minimize restrictions placed on a parent's right of possession of or access to their child.").

### C. Random Alcohol Testing Order Exceeded Terms Required to Protect Natalie's Best Interest

The facts regarding Clayton's past alcohol abuse and present alcohol use are sparse and limited, while the alcohol testing requirement in the trial court's

7

order is quite dramatic—effectively requiring Clayton to abstain from any alcohol consumption for eighty hours (or possibly ninety-two hours[5]) preceding any period of possession of Natalie, or otherwise risk modified, supervised visitation of his daughter. We conclude that, based on the limited evidence in the record concerning Clayton's alcohol use, the trial court's order unreasonably exceeded the terms required to protect Natalie's best interest and constituted an abuse of discretion. *See* Tex. Fam. Code Ann. § 153.193; *M.M.M.*, 307 S.W.3d at 849.

Although the record demonstrates that Clayton had a drug addiction, no evidence exists that Clayton has ever had an alcohol addiction, that his drinking ever endangered Natalie in any way, or that all drug addicts are also alcohol addicts. No medical records or prior alcohol-related incidents or convictions relating to any alcohol use by Clayton were offered into evidence at trial. Christina's only testimony regarding Clayton's alcohol use and her reason for requesting alcohol testing was that she knew from living with him in the past "that he does have an issue with alcohol abuse" and that Natalie has told her in the past, after spending the weekend with Clayton, "that he drinks." No evidence exists that Clayton has ever been drunk around his daughter, that he was drinking to the point of intoxication at the time of trial, that his current or past alcohol use is or ever was detrimental to Natalie or Christina, that he ever drove

---

[5]We interpret the requirement that the random alcohol testing occur "within twelve (12) hours of Clayton Newell's possession of the child" to mean that Christina could order the testing to occur *up to twelve hours before or after* Clayton's possession of Natalie.

after drinking, that his personality changed when he drank, or that consuming alcohol within ninety-two hours prior to having possession of Natalie would in any way negatively impact her best interests. *Cf., e.g.*, *In re A.L.E.*, 279 S.W.3d 424, 429–30 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (upholding modification of custody order when "record [was] replete with evidence that [mother's] substance-abuse problems have significantly, and negatively, affected A.L.E. since she came to reside with her mother"); *Ohendalski v. Ohendalski*, 203 S.W.3d 910, 913, 915–16 (Tex. App.—Beaumont 2006, no pet.) (affirming order that prohibited father from driving with children in car when father had history of chronic alcohol abuse, drank during supervised visitations, and "terrorized" children by driving under the influence); *Hopkins v. Hopkins*, 853 S.W.2d 134, 138 (Tex. App.—Corpus Christi 1993, no writ) (upholding restrictions on father's access to children based on evidence that he had been convicted of delivery of controlled substances, used drugs in front of the children, and physically abused mother and oldest child on multiple occasions); *see also In re L.M.M.*, No. 03-04-00452-CV, 2005 WL 2094758, at *5, 8 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.) (finding allegations that father drank and drove not corroborated by testimony when father admitted to drinking in the evenings with children present but not to point of intoxication and said he never drives intoxicated, and when other witnesses confirmed that he does not drink and drive). Furthermore, the evidence in the record shows that Clayton had been drug-free the entire year

9

preceding trial[6] and that he agreed not to drink during or within twelve hours prior to any possession of Natalie.

Clearly, the trial court has discretion to order alcohol testing on appropriate facts. *See* Tex. Fam. Code Ann. § 153.253, .256; *see also A.L.E.*, 279 S.W.3d at 433 (upholding order requiring drug and alcohol testing). But, in this case, considering the limited facts regarding Clayton's alcohol use in the past and at the time of trial; considering that in the year prior to trial, he tested negative for drug use multiple times; and considering the drastic restriction placed on Clayton's alcohol use and the severe consequences of a positive alcohol test—which could be attributable to alcohol Clayton drank while Natalie was not in his possession—we hold that the trial court's order requiring three random, eighty-hour alcohol tests exceeded the restrictions required to protect Natalie's best interest.[7] *See* Tex. Fam. Code Ann. § 153.193; *see also Pierre*, 50 S.W.3d at

---

[6]The record suggests that the trial court included the alcohol testing requirement, at least in part, based on Clayton's prior drug abuse. At the end of trial, the trial court explained,

> I think given the drugs that you chose to use, heroin and cocaine, which are pretty hard drugs and fairly addictive, and -- and it takes a while before you -- and even the experts agree someone has kicked an addiction. I'm going to go ahead and sign the decree with the provisions in here as they are.

[7]The dissent argues that we must remand this case for a new trial, rather than delete the alcohol testing requirement, unless we hold that no evidence supports the trial court's decision. Dissenting Op. at 5. However, as we mentioned above, in family law cases, legal and factual insufficiency are not independent reversible grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *T.D.C.*, 91 S.W.3d at 872; *see*

10

559 (holding that trial court abused its discretion by requiring father to submit to drug and alcohol testing at his expense "in the absence of any evidence of drug abuse"). Consequently, we hold that the trial court abused its discretion by entering the order that it entered, and we sustain Clayton's second issue.[8] *See M.M.M.*, 307 S.W.3d at 849.

---

*W.M.*, 172 S.W.3d at 725. In other words, the applicable abuse of discretion standard of review overlaps with the traditional sufficiency standard of review. *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). Here, having considered the sufficiency of the evidence in assessing whether the trial court abused its discretion as alleged in Clayton's second issue, and having held that the trial court did in fact abuse its discretion by ordering the alcohol testing that it ordered because it exceeded the restrictions required to protect Natalie's best interest, the appropriate remedy is to delete the alcohol testing requirement from the decree and affirm as modified. *See, e.g.*, *In re K.N.C.*, 276 S.W.3d 624, 628 (Tex. App.—Dallas 2008, no pet.) (modifying decree to name two specific individuals, agreed to by the parties, as alternative visitation supervisors, rather than allowing mother to effectively veto father's visitation if she did not agree upon supervisor); *In re C.A.M.M.*, 243 S.W.3d 211, 223 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (reforming trial court's order to remove requirement of supervised visitation); *In re Pierre*, 50 S.W.3d 554, 559 (Tex. App.—El Paso 2001, no pet.) (reforming trial court's order to omit alcohol and drug testing requirement).

Our holding in no way limits Christina's ability to seek modification of the possession order based on future events. *See* Tex. Fam. Code Ann. § 156.101 (West Supp. 2010) (providing for modification of possession order).

[8]Because Clayton's second issue is dispositive, we need not address his first issue claiming that the trial court abused its discretion because the order is not based on factually sufficient evidence. *See* Tex. R. App. P. 47.1.

## IV. CONCLUSION

Having sustained Clayton's second issue, we modify the trial court's judgment to delete the requirement that Clayton submit to random alcohol testing and affirm the trial court's judgment as modified. *See* Tex. R. App. P. 43.2(b).

SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER, and MCCOY, JJ.

LIVINGSTON, C.J. filed a dissenting opinion.

MCCOY, J. filed a concurring opinion.

DELIVERED:  August 18, 2011



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00301-CV

CLAYTON NEWELL                                                                 APPELLANT

V.

CHRISTINA N. NEWELL                                                            APPELLEE

----------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

----------

## CONCURRING OPINION

----------

I concur that the trial court abused its discretion by entering the judgment it entered concerning testing for alcohol use but for a different reason than enunciated by my fellow justice. I believe that the trial court has the right, and in fact, the obligation to order alcohol testing depending on the circumstances. I further believe that there is sufficient evidence in this case to warrant testing pursuant to the court's judgment except as to the timing of the testing. To test within twelve hours of possession of Natalie seems to imply that it is to be within

twelve hours after the beginning of the possession of Natalie, but as worded, could also theoretically be from twelve hours before the beginning of the possession of Natalie until twelve hours after the end of possession of Natalie.  It is only testing at the later time that accomplishes the obvious purpose of the requirement, that is, to ensure that Clayton not drink alcohol while in possession of his daughter.  Any testing while in possession, or prior to possession of Natalie, would allow Clayton to drink alcohol after the test but while in possession of his daughter.

     For the foregoing reason, I concur in the outcome reached by my fellow justice.

                          BOB MCCOY
                          JUSTICE

DELIVERED:  August 18, 2011


CLAYTON NEWELL                                                          APPELLANT

V.

CHRISTINA N. NEWELL                                                      APPELLEE

----------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

----------

**DISSENTING OPINION**

----------

While the majority's opinion correctly explains the abuse of discretion standard that we employ when reviewing a trial court's decision in a conservatorship appeal, the majority errs in applying that standard because the trial court's decision to require Clayton to take three random alcohol tests per year within twelve hours of possessing Natalie is neither arbitrary nor unreasonable. *See In re W.M.*, 172 S.W.3d 718, 724 (Tex. App.—Fort Worth 2005, no pet.) (explaining that the "trial court has wide latitude in determining the

best interests of a minor child"). We must be cognizant that the trial court is in a better position to decide issues within custody cases because "it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.) (quoting *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied)). An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the decision. *W.M.*, 172 S.W.3d at 725.

The best interests of the child must be the primary consideration of the trial court when determining issues of conservatorship and possession of and access to a child. Tex. Fam. Code Ann. § 153.002 (Vernon 2008); *M.M.M.*, 307 S.W.3d at 850.[1] The trial court's order requiring Clayton to submit to alcohol testing does not deny his possession of Natalie; it imposes restrictions on his right to possess her. The trial court asked Christina about the basis for her desire to require alcohol testing. She said, "Because I know from past experience living with him that he does *have an issue* with alcohol abuse. My daughter *numerous times comes home* from her weekends with him and state[s] that he drinks." [Emphasis added.] The trial court could have determined that Christina's present-tense explanation of Clayton's alcohol consumption around Natalie

---

[1]Thus, I disagree with the majority's statement that the trial court's *ultimate* goal is to minimize restrictions placed on a parent's right of possession. *See* Majority Op. at 7. To the extent that this goal conflicts with the child's best interests, the child's best interests should predominate.

weakened his credibility on the rest of his testimony concerning the nature of his alcohol consumption because he had previously testified that he would never drink around her.[2] Although Clayton denied ever having an addiction to alcohol, he admitted that he has abused alcohol in the past. He further admitted that he still drinks alcohol. He conceded that he thought that it was fair for the court to enjoin both parents from drinking alcohol while in possession of Natalie or within twelve hours of that possession.

Clayton also has a history of drug addiction, including the use of heroin, cocaine, and marijuana. He admitted that he has stopped attending Narcotics Anonymous meetings because he does not own a vehicle. The trial court could have reasonably found that Clayton's problem with drug abuse, including prior relapses and the use of drugs even after attending rehabilitation, justified also testing him for alcohol consumption, particularly because he admitted that he had abused alcohol in the past. *Cf. In re Pierre*, 50 S.W.3d 554, 559 (Tex. App.—El Paso 2001, orig. proceeding) ("[I]n the absence of any evidence of drug abuse . . . the trial court abused its discretion by requiring Relator to submit to drug and alcohol testing and ordering him to pay for the same."). I would hold that the trial court had sufficient information upon which to exercise its discretion and did not err in its application of that discretion by weighing evidence that produced

---

[2]Specifically, the trial court could have reasonably inferred from Natalie's "numerous" statements to Christina that Clayton's alcohol consumption was not as controlled as he had testified.

conflicting inferences about Clayton's extent of alcohol use (including use around Natalie) and the need for alcohol testing. *See M.M.M.*, 307 S.W.3d at 849; *W.M.*, 172 S.W.3d at 725.

Clayton also argues that because the alcohol testing ordered by the trial court requires screening for the preceding eighty-hour period even though he will not always have possession of Natalie during the entire eighty hours, he could test positive for alcohol yet not be in violation of the agreed injunction. Therefore, Clayton contends, the trial court cannot impose such a restriction. I find this argument unpersuasive. The trial court asked the parties whether there was a test available that would cover a lesser period of time. Christina's counsel stated that she did not know of any such test (and Clayton did not offer to take such a test if one exists). Thus, the trial court decided to leave the eighty-hour test in place. The court could have reasonably determined that Natalie's best interests required Clayton to refrain from consuming alcohol during or immediately before his possession of her, and Clayton conceded that it was fair that he not drink within twelve hours of possessing her. He did not, however, propose a means other than the eighty-hour test of ensuring that result while still allowing him to drink at times before his immediate possession of her. During a hearing on Clayton's motion for new trial, the trial court offered such an alternative—to wear a device (at his expense) that would detect his alcohol consumption only while he possessed Natalie—but he did not choose to do so.

4

For these reasons, I would hold that the trial court did not abuse its discretion by including the provisions regarding alcohol testing in the judgment, and I would therefore affirm the judgment.

Finally, even if I agreed with the majority's conclusion that the trial court abused its discretion, I would still dissent to the majority's disposition of the appeal. The majority essentially holds that the trial court abused its discretion because the facts of this case are inappropriate and insufficient to show that Clayton's random alcohol tests are in Natalie's best interests. *See* Majority Op. at 9-10. In such a situation, unless the majority expressly holds that there was *no* evidence to support the trial court's decision, it should remand, based on factual insufficiency, rather than deleting the alcohol testing requirement. *See Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex. 1981) (holding that if a court of appeals sustains an issue or point because the evidence is factually insufficient, it must reverse the judgment of the trial court and remand for new trial); *In re T.D.C.*, 91 S.W.3d 865, 877 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g) (remanding a custody case based on a determination that the trial court abused its discretion because its decision was based on factually insufficient evidence); *Enriquez v. Krueck*, 887 S.W.2d 497, 503 (Tex. App.—San Antonio 1994, no writ) (same); *see also In re J.O.A.*, 283 S.W.3d 336, 347 (Tex. 2009) ("[A] remand is . . . the appropriate judgment when evidence is found to have been factually insufficient[.]"); *Wilson v. Wilson*, 132 S.W.3d 533, 534, 539 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)

5

(remanding a case regarding the division of a community estate because of an abuse of discretion based on factual insufficiency).[3]

For all of these reasons, I dissent to the majority's opinion and judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

DELIVERED:  August 18, 2011

---

[3]The cases cited in footnote seven of the majority's opinion are inapposite. *See* Majority Op. at 10–11 n.7.  In *In re C.A.M.M.*, the appellate court removed a requirement of supervised visitation because the requirement had not been included in trial court's original custody order and there was *no* argument made (and apparently no evidence presented) regarding visitation in the father's motion for new trial.  243 S.W.3d 211, 222–23 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  And in *In re Pierre*, the appellate court reformed an order to delete a drug testing requirement because there was an "absence of *any* evidence of drug abuse."  50 S.W.3d at 559 (emphasis added).