In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-13-00083-CV**
**IN THE INTEREST OF Z.M.L. AND C.M.L.**

**On Appeal from the 418th District Court**
**Montgomery County, Texas**
**Trial Cause No. 04-09-07549-CV**

## MEMORANDUM OPINION

In this post-divorce modification suit affecting the parent-child relationship, appellant, Monica Posey, appeals the trial court's final order naming James Michael Lowe ("Michael") as sole managing conservator of Z.M.L. and C.M.L., their minor children. Specifically, Monica contends the trial court abused its discretion in ordering Monica's possession of and access to C.M.L. to be supervised. We affirm the trial court's judgment.

### Background

Monica and Michael were married on May 8, 1993. Two children were born of the marriage: Z.M.L. and C.M.L. Monica and Michael divorced in 2005. At the

1

time of the divorce, Z.M.L. was eight years old and C.M.L. was six years old. The court appointed Monica and Michael joint managing conservators of the children and imposed a standard possession order. Monica was awarded the exclusive right to determine the children's primary residence, and Michael was ordered to pay Monica child support.

In 2011, Michael filed a post-divorce petition for modification of child custody. Michael asked the court to appoint him the children's sole managing conservator. On June 8, 2011, the trial court modified its original order and (1) appointed Michael as sole managing conservator of the children, and Monica as possessory conservator; (2) ordered Monica's access to the children contingent on her continuing involvement in a 12-step program for her addictions; (3) ordered Monica's visitation with the children to be supervised by a court-approved third party; and (4) enjoined Monica from consuming alcohol within twenty-four hours before or during her periods of possession of the children.

On October 20, 2011, Michael filed a petition to modify the trial court's June 2011 order. Among other things, Michael requested the trial court to order no contact between Monica and Z.M.L. and requested that all visitations between Monica and C.M.L. be supervised. Monica filed a counter- petition to modify the parent-child relationship and requested the court to order unsupervised visitation pursuant to a standard possession order. The trial court issued temporary orders

2

that (1) prohibited Monica from contacting Z.M.L.; (2) required Monica's visitation with C.M.L. be supervised during the first two hours but unsupervised for the final two hours; and (3) ordered all phone contact between Monica and C.M.L. cease unless C.M.L. initiated the contact. The case proceeded to a bench trial with several witnesses being called to testify.

Six witnesses testified at the bench trial and the trial judge interviewed the children in chambers. The court heard testimony of Monica's continued struggles with chronic illness, mental health issues and addictions. Monica was eventually hospitalized for treatment of her mental health issues. There is direct evidence in the record that Monica appeared in court in an impaired condition, which Monica attributed to her use of prescribed narcotic medications for pain. Monica also testified she takes antipsychotic medication and another medication that is sometimes prescribed for treatment of schizophrenia. While there was positive testimony that Monica was continuing to seek treatment to cope with these conditions, there was also testimony that Monica continued to behave inappropriately around the children and have inappropriate conversations with the children that adversely affected their emotional well-being.

A counselor testified that Z.M.L.'s emotional state began to deteriorate somewhat when his interactions with his mother increased. Z.M.L. eventually required hospitalization and extended treatment at a residential treatment facility

3

where he was diagnosed with major depressive disorder and post-traumatic stress syndrome associated with his mother's behavior. The court heard poignant testimony that while Z.M.L. was hospitalized, his mother sent him a package with books and a letter. When Z.M.L. read the letter and looked through the books, he became "physically agitated, just almost crying and shaking[.]" The books were about surviving sexual abuse and overcoming personality disorders and it appeared that Monica had hand-written notes in the books about her own experiences with sexual abuse and mental illness. There was testimony that Z.M.L. became "completely distraught" at this, which sent him "over the edge."

While the evidence was that C.M.L. seemed less affected from Monica's behavior, a licensed professional counselor testified that she could not rule out the possibility that C.M.L.'s distress may eventually reach the same level as that of her brother unless appropriate boundaries were put in place to protect the child. The trial court heard testimony that C.M.L.'s behavior changes after she interacts with her mother—C.M.L. becomes angry and confrontational. The counselor did not feel that Monica's visitation with C.M.L. needed to be supervised, but it was her opinion the standard visitation order was not appropriate and C.M.L. should not have overnight visits with her mother.

Monica disputed that she currently has mental health problems and testified that she is receiving treatment and is being prescribed medications for her ongoing

4

medical problems. She denied that her medications impaired her ability to care for her children. While she testified that she is stable and that her husband and mother live with her, she admitted that her mother is an active alcoholic. Further, she admitted to harassing the children's father and interfering with his employment. The father testified that such harassment and threats continued up to the date of trial. Monica conceded that her interference with the employment of the children's father was not in the best interest of the children.

At the conclusion of the bench trial, the trial court issued its order (1) appointing Michael as sole managing conservator and Monica as possessory conservator of both children; (2) ordering that all visitation and telephone contact between Monica and Z.M.L. be initiated only by Z.M.L.; (3) ordering all visitation between Monica and C.M.L. be supervised in both Texas and in Georgia; and (4) ordering that all telephone conversations between Monica and C.M.L. be unsupervised and unmonitored.

The trial court further issued separate findings of fact and conclusions of law. In its findings, the court found many portions of Monica's testimony during the trial to be "incredible." The court found that Monica posed an emotional danger to her children. The court found Monica:

> (a) has a history or pattern of emotional abuse affecting the children,
> (b) has a history or pattern of making false reports or allegations against [Michael], (c) is not presently fit to care for either child

5

without appropriate supervision, (d) has a history of drug and/or alcohol abuse (including appearing before this Court in what appeared to be an impaired state during the trial of this matter), (e) has past and/or current mental health issues that could affect the welfare of the children, and (f) has previously allowed her sexual conduct to [affect] her fitness to act as a parent as one of the children was exposed to such conduct on more than one occasion.

The court found that the periods of possession and other orders by the court were in the best interests of the children.

### Standard of Review

We review conservatorship determinations for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re W.C.B.,* 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.). "The trial court is given wide latitude in determining the best interests of a minor child." *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re H.M.B.*, No. 09-05-179-CV, 2006 WL 666015, at *2 (Tex. App.—Beaumont Mar. 16, 2006, no pet.) (mem. op.). In determining if the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles—that the trial court's decision was arbitrary and unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). The trial court does not abuse its discretion when it bases its decision on conflicting evidence. *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.). So long as there is some evidence of substantive and probative character to support the trial court's decision, we will not find an abuse of discretion. *Butnaru*

6

*v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). In our review, we acknowledge that "[t]he trial court is in a better position to determine what will be in the best interest of the child since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).

In determining whether a trial court abused its discretion in its child custody ruling, we do not consider legal and factual sufficiency as independent grounds of error but as relevant factors in deciding whether the trial court abused its discretion. *Newell v. Newell*, 349 S.W.3d 717, 720 (Tex. App.—Fort Worth 2011, no pet.); *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). In this regard, we consider whether the trial court had sufficient information to exercise its discretion and whether it erred in its application of that discretion. *M.M.M.*, 307 S.W.3d at 849. The traditional sufficiency review is relevant with regard to determining if the trial court had sufficient evidence to exercise its discretion. *Id.* (citing *In re W.M.*, 172 S.W.3d 718, 725 (Tex. App.—Fort Worth 2005, no pet.)). We then ask whether the trial court made a reasonable decision considering the evidence presented. *M.M.M.*, 307 S.W.3d at 849.

**Supervised Visitation**

Monica contends that the trial court abused its discretion by ordering her visitation with C.M.L. to be supervised. The Family Code permits modification of a conservatorship order or an order establishing possession and access if the modification is in the child's best interest and the circumstances of the child, conservator, or other party affected by the order have "materially and substantially changed[.]" Tex. Fam. Code Ann. § 156.101(a)(1) (West 2014). Monica does not challenge the trial court's finding that the child's circumstances had materially and substantially changed. She essentially challenges the trial court's finding that limiting her access to C.M.L. by imposing supervised visitations was in C.M.L.'s best interest.

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* § 153.002. There is a rebuttable presumption that the standard possession order "provides reasonable minimum possession of a child for a parent named as a possessory conservator" and is in the child's best interest. *Id.* § 153.252. The trial court may deviate from the standard possession order in consideration of (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing and possessory conservators, (3) and any other relevant factor. *See id.* § 153.256. A trial court's order that imposes restrictions or limitations on a parent's right to possession of or

access to a child may not exceed terms that are required to protect the best interest of the child. *Id.* § 153.193.

In determining the best interest of C.M.L., the trial court could have considered the following non-exhaustive factors: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing relationship is not a proper one; and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The trial court interviewed Z.M.L. and C.M.L. in chambers. Neither party requested a record to be made of the interviews. The trial court notes that its findings and conclusions are supported not only by the evidence from the trial, but also by the interviews the court conducted with the children. It is undisputed that C.M.L. desires a relationship with her mother and loves her mother. However, the record does not indicate what her desires are concerning supervised visitation.

A number of the *Holley* factors come into play when there is an issue of impairment caused by drugs or alcohol. Monica testified that she takes a number of

9

prescription medications. While she denied having an addiction to her medication, she did admit to taking a number of medications that could cause impairment. Monica testified that she did not see how her level of medication has affected her children negatively. Monica's husband testified in support of her position and stated that it was his opinion that Monica does not abuse her medication and does not always appear medicated. However, Michael and Suzan both testified that Monica seems to always be in a state of impairment, even when interacting with C.M.L. According to Suzan, Monica consistently has slurred speech, confusion, and shows aggression. Additionally, Monica's impairment due to her prescription drug use is apparent in the record before us. It is undisputed that Monica attended the trial of this matter in an impaired state due to her prescription drug use.

In support of her position that supervised visitation is not in C.M.L.'s best interest, Monica relies most heavily on her own testimony and that of C.M.L.'s former therapist, Burbank. Burbank testified that she did not believe C.M.L.'s visits with Monica needed to be supervised. Burbank also acknowledged that Monica has had times when she was a "phenomenal mother" and that Monica has a close relationship with C.M.L. While we accept these as positive statements on Monica's behalf, Burbank also attributed Z.M.L.'s emotional deterioration in part to his contact with Monica. Burbank also noted that since Monica's last hospitalization in June 2011, Monica has had some episodes with emotional

10

escalation. Finally, Burbank admitted that she could not say with certainty that C.M.L.'s distress regarding her interactions with Monica would not reach the same level as that of Z.M.L., who was eventually diagnosed with major depressive order and post-traumatic stress syndrome associated with his relationship with Monica.

Michael testified that he is concerned about C.M.L. and that C.M.L.'s behavior changes—she becomes angry and confrontational—after speaking with Monica on the phone. Michael testified that he is concerned about Monica's unpredictability, her boundary issues, and her vengeance against him, which affects C.M.L. He related at length the struggles he has had resulting from the false allegations and threats that Monica has made against him. The record supports that Monica has admitted to making these false allegations and threats and she has admitted that this behavior is not in the best interest of her children.

Michael's wife also testified at length about Monica's interaction with Z.M.L. and C.M.L. She testified that Monica assaulted her on two occasions, once while she was pregnant. She testified that Monica is a continued danger and she believes that supervised visitations are necessary to protect C.M.L. from Monica's inappropriate behavior.

There is evidence in the record that Monica suffers with some mental health issues, which, when combined with her prescription drug use, has impaired her ability to properly parent her children and protect their emotional needs. While the

11

record establishes that Monica's condition has significantly improved through her voluntary actions and efforts, there is evidence that Monica's behaviors and improper boundaries remain an issue and have become emotionally overwhelming for her children.

Based on our review of the record before us, we hold that there is sufficient evidence of substantive and probative character for the trial court to have found that ordering Monica's possession of and visitation with C.M.L. to be supervised is in C.M.L.'s best interests, and we therefore overrule Monica's first and second issues and affirm the judgment of the trial court.

AFFIRMED.

                                                _____

                                                      CHARLES KREGER
                                                          Justice

Submitted on April 9, 2014
Opinion Delivered September 4, 2014

Before McKeithen, C.J., Kreger, and Horton, JJ.