# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00288-CV

**Alexander D. Young, Appellant**

**v.**

**Mikayla M. Marquardt, Appellee**

### FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 17-0028-F425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Alexander D. Young, who is incarcerated and acting pro se, appeals the district court's final orders entered after he filed an answer but failed to appear at the April 4, 2024 final hearing on Mikayla M. Marquardt's suit to modify the parent-child relationship (SAPCR) as to their child, K.Y.[1]  Young contends that he was not served with notice as required by the Texas Rules of Civil Procedure and that the district court erred by (1) entering a default judgment solely because he failed to appear at the final hearing, (2) relying only on Marquardt's testimony and evidence at the final hearing when determining K.Y.'s best interest, and (3) ordering him to pay child support and other fees without evidence of the parties' tax returns, financial statements, and "other documentation."  We will affirm the district court's final orders.

---

[1]  The record refers to this proceeding interchangeably as the "final hearing" and the "final trial."

## BACKGROUND

Marquardt and Young are the parents of ten-year-old K.Y. On August 11, 2022, Marquardt and Young entered into an agreed final order in a SAPCR suit. On September 7, 2023, Marquardt filed her petition to modify the parent-child relationship, alleging that Young has engaged in a history or pattern of child neglect. Marquardt attached to her petition an affidavit averring, among other things, that over the previous year, Young's behavior began to make her concerned for her safety and that of K.Y.:

- Young had left K.Y. stranded after school, and Marquardt went to get her after the school called Marquardt at work. K.Y. had also been late to school on several occasions while in Young's possession.

- On June 4, 2023, Young called Marquardt "because he could not take care of [K.Y.] anymore." Young had taken methamphetamine and fentanyl earlier that day and later attempted suicide by overdosing. Marquardt picked up K.Y. immediately. When she went to Young's house and saw the living conditions that K.Y. experienced while with him, Marquardt became very concerned. That night, the hospital deemed Young "unsafe for his own well-being" and took him to Georgetown Behavioral Health, where he stayed for a week.

- Marquardt believes that after Young's release from Georgetown Behavioral Health, "he immediately started using [drugs] again. He sold his RV shortly after and was then homeless." Marquardt believes that Young resumed dealing drugs and living with random people.

- In July 2023, Young made physical threats against Marquardt if she called the police. Later that month, Young overdosed and was revived by first responders.

- In August 2023, Marquardt "was informed that Alex [Young] had 143g of heroin in his possession," which made her "believe he is still using."

On September 19, 2023, Young e-filed his answer, which identified his email address as 2023legal.1989@gmail.com and his home address as 2800 Sunrise Road Apt. 1217, Round Rock, Texas 78665. Until his May 2, 2024 notice of appeal listing a Williamson County Jail address, Young did not notify the court or the parties that his contact information changed.

Marquardt filed a Notice of Final Trial on February 6, 2024, informing Young that the final trial was set for 9:00 am on April 4, 2024. She sent the notice to Young by email to 2023legal.1989@gmail.com, the same address listed on his answer. Marquardt's attorney also sent the notice to Young by certified mail to the home address in Round Rock that was listed on his answer and to a drug-rehab facility where he had been admitted in Temple, but both notices were returned as undeliverable and unable to forward.

The final hearing on the modification petition proceeded on April 4. Only Marquardt appeared. She testified that Young had been in jail for about six months on charges of manufacturing and using fentanyl and methamphetamine, that the addresses used in attempt to serve Young with notice of the final hearing were addresses where he had once lived, that he was out on bond and in a 30-day rehab when service of the notice was attempted, and that the rehab facility was one of the addresses where service was attempted. Jail records in evidence show that Young was released (for rehab) on January 10, 2024, and jailed again on February 26, 2024.

Marquardt reviewed the proposed final orders in her modification suit and testified that the terms of the final orders are in K.Y.'s best interest. Among other things, Marquardt asked that Young receive a tiered possession-and-access schedule due to his history of drug abuse. She testified that Young would "sleep all the time when he has [possession of] her [K.Y.], forgetting to pick her up from school, and [Marquardt] being called at work." Young also "le[ft] notes on [Marquardt's] door[]step saying that he can't come for the weekend."

Because Marquardt witnessed Young "either abusing drugs or alcohol or the aftermath of him abusing drugs or alcohol," she requested that the district court order Young to complete drug and alcohol tests before beginning each tiered possession step and give her the right to request a random nail-bed or hair-follicle test up to three times a year. She also

3

requested that the court: order Young to submit to such testing within 48 hours of the request; order that if Young fails a test or fails to submit to the drug and alcohol tests, he shall immediately revert to step-one visitation; and order that if Young fails one of the random tests, his visitation will be suspended until he provides a clean test. Marquardt further requested that Young complete the five tiers of possession before he could exercise a standard possession schedule subject to the testing requirements.

Additionally, Marquardt told the district court that maintaining sole managing conservatorship is in K.Y.'s best interest because Young was in jail at the time, his mental stability was "not great" even after his most recent time in rehab, he did not report back to jail immediately, and he was suicidal and still had urges to use drugs. Marquardt testified that after Young had been gone for a significant amount of time, K.Y. asked her "if it was about the drugs." K.Y. told Marquardt that "maybe that's what it was" because of the "places" Young had taken her. Marquardt said that what K.Y. "described was a trap house, very dirty, messy, things everywhere, stuff that she should never see."

After the hearing, the district court signed its Final Orders in Suit to Modify the Parent-Child Relationship, which included provisions for child support, health and dental insurance, wage withholding, and costs of alcohol and drug testing and reunification-therapy sessions. On May 2, 2024, Young filed his notice of appeal, stating that he learned about the final orders in the modification suit from a phone call with his mother "after the 4-4-24 hearing," that she "obtained the Order in late April via email after requesting the records from the clerk of the court," and that she "provided [Young] with the Order via the Jail's communication system in late April." Young expressly denies having "seen any transcripts of Mikayla Marquardt's testimony or exhibits entered into evidence" at the final hearing.

4

## DISCUSSION

### I. Failure to overcome presumption of receipt of notice

Young first contends that Marquardt did not serve him with notice as required by the Texas Rules of Civil Procedure. Texas Rule of Civil Procedure 21a requires the party or attorney serving a notice to certify to the court compliance with the rule in writing, over signature, and on the filed instrument. Tex. R. Civ. P. 21a(e). This certificate of service is prima facie evidence of the fact of service, although a party may offer proof that the document was not received. *Id.* The record contains a "Notice of Final Trial" with a certificate of service signed by Marquardt's attorney, who certified that a true copy of the notice was served in accordance with the Texas Rules of Civil Procedure on February 6, 2024, to "Alexander D. Young, *Pro Se* litigant 2023legal.1989@gmail.com." The Automated Certificate of eService, copied below, shows that the notice of final trial was "SENT" to Young at that email address:

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Winifred Bates on behalf of Winnie Bates Bar No. 24012131
paralegal@bateslaw.com Envelope ID: 84211759
Filing Code Description: Notice
Filing Description: Notice of Final Trial filed by W. Bates/Atty - EV#84211759
Status as of 2/7/2024 8:51 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Winnie Bates | | win@bateslaw.com | 2/6/2024 3:34:09 PM | SENT |

Associated Case Party: AlexanderD.Young

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alexander Young | | 2023legal.1989@gmail.com | 2/6/2024 3:34:09 PM | SENT |

A document filed electronically under Rule 21a "must be served electronically through the electronic filing manager if the email address of the party or attorney to be served is on file with the electronic filing manager." *Id.* R. 21a(a)(1). Although pro se litigants are not required to participate in the electronic service program, if the pro se litigant's email address is on file, the document may be filed electronically or by such other manner as the court in its discretion may direct. *Ahmed v. Parvin*, No. 14-21-00143-CV, 2022 WL 1575490, at *4 (Tex. App.—Houston [14th Dist.] May 19, 2022, pet. denied) (mem. op.). The rules of civil procedure required Young to designate an email address on his pleadings. *See* Tex. R. Civ. P. 57 ("A party not represented by an attorney shall sign his pleadings, state his address, telephone number, email address, and, if available, fax number."); *Ahmed*, 2022 WL 1575490, at *4.

Young provided his email address when he filed his answer to Marquardt's petition to modify the parent-child relationship. The Automated Certificate of eService shows that the notice of final trial was sent to Young using the same email address that he designated on his answer. Thus, the certificate of service on the notice of final trial raised a presumption that Marquardt served the notice and that Young received it. *See* Tex. R. Civ. P. 21a(e) ("A certificate by . . . an attorney of record, . . . showing service of a notice shall be prima facie evidence of the fact of service."); *Ahmed*, 2022 WL 1575490, at *4; *Johnson v. Harris County*, 610 S.W.3d 591, 595 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also Adekoya v. Adekoya*, No. 03-16-00195-CV, 2017 WL 3902945, at *1 (Tex. App.—Austin Aug. 24, 2017, no pet.) (mem. op.) (noting, in appeal from post-answer default judgment, that "the trial court is presumed to have heard the case only after proper notice to the parties" and "[t]o rebut this presumption, the movant must affirmatively show a lack of notice").

6

To rebut the presumption of receipt, Young had the burden to present evidence showing that he did not receive the notice. *See Johnson*, 610 S.W.3d at 595-96. He did not make that showing to the district court or this Court. He presents no evidence, only arguments that (1) he has been incarcerated in the Williamson County Jail since September 6, 2024, where he was restricted from internet and email access; (2) he was temporarily released on January 10, 2024, to receive 30 days of treatment in a drug-rehab facility; (3) he returned to jail on February 27, 2024; (4) Marquardt knew he was under these restrictions "due to his incarceration"; and (5) she served him using "an email address that does not exist."[2] *Cf. Adekoya*, 2017 WL 3902945, at *1 (concluding that spouse failed to rebut presumption of proper notice by providing no affidavits or other competent evidence demonstrating lack of notice and relying solely on statements in his unverified motion for new trial).

"In the absence of any proof to the contrary, the presumption [of receipt of notice] has the force of a rule of law." *Johnson*, 610 S.W.3d at 596. Because Young provided no evidence rebutting the presumptions of proper service and receipt of the notice of final trial, we overrule his issues contending that he was not served with notice as required by the Rules of Civil Procedure and that the default judgment was entered only because he failed to appear at the final hearing.

## II. No abuse of discretion in district court's final orders

The record shows that the district court signed the Final Orders on Suit to Modify Parent-Child Relationship on April 4, 2024, after Young failed to appear at the final hearing and

---

[2] Young's account of his whereabouts suggests that on February 6, 2024, when the notice of final trial was emailed to him, he was not jailed but temporarily released to a drug-rehab facility.

after Marquardt presented some evidence supporting the allegations in her petition. Young learned about the final orders "in late April," less than 30 days after those orders were signed and before expiration of the deadline for filing a motion for new trial. *See* Tex. R. Civ. P. 329b(a) (any motion for new trial must be filed within 30 days after judgment is signed).

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling sought. Tex. R. App. P. 33.1(a). Prerequisites for setting aside post-answer and no-answer defaults are the same. *Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex. 1987); *Harris v. Burks*, No. 01-06-00128-CV, 2007 WL 1776048, at *1 (Tex. App.—Houston [1st Dist.] June 21, 2007, no pet.) (mem. op.). They also apply to final orders in SAPCRs. *Harris*, 2007 WL 1776048, at *1. A default judgment should be set aside and a new trial ordered in any case in which (1) the failure of the defendant to answer or appear was not intentional or the result of conscious indifference on his part, but was due to mistake or an accident, (2) provided the motion for new trial sets up a meritorious defense and (3) is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). "A point in a motion for new trial is a prerequisite to . . . a complaint on which evidence must be heard such as . . . [a] failure to set aside a judgment by default[.]" Tex. R. Civ. P. 324(b)(1); *Harris*, 2007 WL 1776048, at *2 (noting that complaint about failure to set aside default judgment must be raised in motion for new trial because trial court must hear evidence to determine whether *Craddock* factors have been met). Because Young did not move for a new trial, he is not entitled to have the default judgment set aside under *Craddock*.

However, the failure to file a motion for new trial after default will not bar an evidentiary-sufficiency challenge. *In re Marriage of Williams*, 646 S.W.3d 542, 545 (Tex.

8

2022).  Thus, to the extent that they may be construed as sufficiency challenges, Young's complaints that the final-hearing orders were issued on one-sided evidence and without evidence of the parties' finances are addressed below.[3]

A court may modify an order that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child, if such modification would be in the child's best interest, and if the circumstances of the child, a conservator, or another party affected by the order have materially and substantially changed since the date of rendition of the order.  Tex. Fam. Code § 156.101(a)(1)(A).  As the party seeking modification of the August 11, 2022 agreed final order, Marquardt had the burden to present evidence of that material and substantial change in circumstances.  *See In re S.N.Z.*, 421 S.W.3d 899, 909 (Tex. App.—Dallas 2014, pet. denied).

We review a trial court's modification order under an abuse-of-discretion standard.  *In re J.R.D.*, 169 S.W.3d 740, 742–43 (Tex. App.—Austin 2005, pet. denied).  "A trial court abuses its discretion when it acts 'without reference to any guiding rules or principles; or in other words, [when it acts] arbitrarily or unreasonably.'"  *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (internal citation omitted).  Under the abuse-of-discretion standard, issues concerning the legal and factual sufficiency of the evidence are not independent grounds of error

---

[3] However, we may not consider either the documents in appendices 2-8 of Young's brief, which were not filed in the clerk's record or admitted into evidence, or Young's factual arguments that were not first presented to the district court.  *See* Tex. R. App. P. 34.1 (describing contents of appellate record); *Blunck v. Blunck*, No. 03-15-00128-CV, 2016 WL 690669, at *3 (Tex. App.—Austin Feb. 18, 2016, pet. denied) (mem. op.) (refusing to consider affidavit attached to reply brief "that was not before the trial court"); *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied) ("We are limited to the appellate record provided"); *Burke v. Insurance Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied) (noting that documents that are cited in brief and attached as appendices generally may not be considered by appellate courts if they are not formally included in record on appeal).

but relevant factors in assessing whether the trial court abused its discretion.  *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.).  When reviewing an assertion that the evidence is factually insufficient to support a finding, we consider all the evidence and set aside the finding only if it so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust.  *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).  When some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion.  *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

## A.  Sufficient evidence that final orders were in K.Y.'s best interest

Young's third issue contends that the district court erred in its application of the best-interest-of-the-child doctrine by relying solely on Marquardt's testimony and evidence and without considering his "testimony and evidence."[4]  The primary consideration in determining issues of conservatorship and possession of and access to a child is always a child's best interest.  *See* Tex. Fam. Code § 153.002; *In re J.A.J.*, 243 S.W.3d 611, 614 (Tex. 2007).  Trial courts may use a non-exhaustive list of factors to aid in the determination, as set out in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).  These include the child's wishes, the child's emotional and physical needs now and in the future, emotional or physical danger to the child now and in the future, the parenting abilities of the parties seeking custody, programs available to help those parties, plans for the child by the parties seeking custody, the stability of the proposed placement,

---

[4] Because Young did not appear at the final hearing or file a motion for new trial, he did not present any testimony or evidence to the district court.

10

the parent's acts or omissions indicating that the parent-child relationship is improper, and any excuses for the parent's conduct. *Id.*

Young alleges that "the findings and conditions set forth and mandated in the Order are not only unreasonable," but also "not in the Best Interest of the Child as The Trial Court referenced in Section 153.001 of the Texas Family Code because there was either a lack of evidence or the evidence presented was hearsay, slanted and untruthful."[5]  He asserts that the court "erred in [its] findings and Order in granting Mikayla Marquardt sole custody and barring Alexander Young from any type of contact for an unreasonable period of time after he is released from jail and allowing contact only if certain conditions were met."

Contrary to Young's assertions, the district court's final orders do not bar Young from "any type of contact" and make no mention of his "release[] from jail."  As to the best-interest evidence and the bases for Marquardt's sole-managing conservatorship, Young's possessory conservatorship, and the tiered possession-and-access schedule, the district court heard Marquardt's testimony that

- Young had been in jail for about six months on charges of manufacturing and using fentanyl and methamphetamine;

- the terms of the proposed final orders were in K.Y.'s best interest;

- Young should receive a tiered possession-and-access schedule for K.Y. because of his history of drug abuse;

- Young would "sleep all the time when he has [possession of] her [K.Y.], forgetting to pick her up from school, and [Marquardt] being called at work";

---

[5] Young's complaints are apparently based on his assumptions, not the evidence, as he expressly denies having "seen any transcripts of Mikayla Marquardt's testimony or exhibits entered into evidence" at the final hearing.

11

- Young would also "leave notes on [Marquardt's] door[]step saying that he can't come for the weekend";

- she witnessed Young "either abusing drugs or alcohol or the aftermath of him abusing drugs or alcohol";

- maintaining sole managing conservatorship is in K.Y.'s best interest because Young was in jail at the time, his mental stability was "not great" even after his most recent time in rehab, he did not report back to jail immediately, and he was suicidal and still had urges to use drugs; and

- after Young had been gone for a significant amount of time, K.Y. asked Marquardt "if it was about the drugs." K.Y. told Marquardt that "maybe that's what it was" because of the "places" Young had taken her. Marquardt said that what K.Y. "described was a trap house, very dirty, messy, things everywhere, stuff that she should never see."

Marquardt's testimony provided some evidence of a substantive and probative character showing a material and substantial change in circumstances, and some evidence that the findings and conditions in the district court's final orders as to conservatorship and possession and access were in K.Y.'s best interest. *See Echols*, 85 S.W.3d at 477.

## B. Sufficient evidence supported final orders as to Young's financial obligations

Young's fourth issue challenges the district court's "decision to order [him] to pay a certain amount of child support and other fees by omitting and/or not entering into evidence the parties' tax returns, financial statements, and other documentation." Within that issue, he argues that the court "unilaterally overrode the 8/11/2022 Order regarding financial obligations of each party" and "changed and ordered a set amount of child support to be paid by Alexander Young as well as adding many other expenses to be paid by Alexander Young without any factual basis or sufficient evidence from either party to support [its] decision."

However, the $400 amount of child support in the final orders was unchanged from the parties' 2022 agreed final order. The $67.72 amount that Young was ordered to

reimburse Marquardt for payment of K.Y.'s health insurance as child support was in accordance with the following provision of the Texas Family Code on "Health Care Coverage for Child":

> If the parent ordered to provide health insurance under Subsection (b)(1) or (2) is the obligee [Marquardt] the court shall order the obligor [Young] to pay the obligee, as additional child support, an amount equal to the actual cost of health insurance for the child, but not to exceed a reasonable cost to the obligor.

Tex. Fam. Code § 154.182(b-1). "Reasonable cost" means "the cost of health insurance coverage for a child that does not exceed nine percent of the obligor's annual resources, as described by Section 154.062(b) [net resources], if the obligor is responsible under a medical support order for the cost of health insurance coverage for only one child." *Id.* § 154.181(e); *see id.* §154.182(c)(2) (stating that "[r]easonable cost" has meaning assigned by § 154.181(e)).

The district court relied on the agreed child-support amount from the parties' 2022 agreed order, and since Young failed to appear, the court did not have new evidence of obligor resources. "In the absence of evidence of a party's resources, as defined by Section 154.062(b), the court shall presume that the party has income equal to the federal minimum wage for a 40-hour week to which the support guidelines may be applied." *Id.* § 154.068(a).[6] Here, the $67.72 health-insurance cost ordered is reasonable because it does not exceed $104.09, the

---

[6] The minimum-wage presumption "does not apply if the court finds that the party is subject to an order of confinement that exceeds 90 days and is incarcerated in a local, state, or federal jail or prison at the time the court makes the determination." Tex. Fam. Code § 154.068(b). That exception does not apply here because the district court's final orders made no such finding that Young was subject to an order of confinement. Further, jail records admitted into evidence show that Young was released on January 10, 2024, and jailed again on February 26, 2024, less than 90 days before the April 4, 2024 final hearing.

amount that is 9% of an obligor's annual resources when calculated using the federal-minimum-wage presumption of income.[7]

Lastly, the final orders requiring Young to (1) reimburse Marquardt for the cost of alcohol and drug testing "if the test results are anything other than negative" and (2) pay for reunification-therapy sessions that are "not otherwise covered by insurance," were necessary only because of Young's own conduct. Young provides no argument or authority that Marquardt should bear those costs instead. Marquardt testified that Young had been in jail for about six months on charges of manufacturing and using fentanyl and methamphetamine, Young had a history of drug abuse; she witnessed Young "either abusing drugs or alcohol or the aftermath of him abusing drugs or alcohol"; after rehab Young still had urges to use drugs; and K.Y. asked Marquardt whether Young's prolonged absence "was about the drugs," which K.Y. presumed because of the "places" Young had taken her, which included a place she described to Marquardt as "a trap house, very dirty, messy, things everywhere, stuff that she should never see.

Marquardt's testimony provided some evidence of a substantive and probative character supporting the district court's final orders making Young responsible for the reimbursement and costs, as summarized above, of alcohol and drug testing and reunification-therapy sessions. *See Echols*, 85 S.W.3d at 477; *see also Newell v. Newell*, 349 S.W.3d 717, 722 (Tex. App.—Fort Worth 2011, no pet.) ("Clearly, the trial court has discretion to order alcohol testing on appropriate facts."); *In re A.L.E.*, 279 S.W.3d 424, 433 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (affirming modification order requiring parent to submit to drug and alcohol

---

[7] The Texas Office of the Attorney General 2024 Tax Chart shows that the gross income for a person earning the federal minimum wage of $7.25 per hour is $15,080 annually and that person's net monthly income is $1,156.54. *See* Off. of the Att'y Gen., 2024 Tax Charts, https://csapps.oag.texas.gov/system/files/2023-12/2024%20Tax%20Charts.pdf (last visited Feb. 21, 2025). Nine percent of that amount is $104.09.

testing); *cf. In re Pierre*, 50 S.W.3d 554, 559 (Tex. App.—El Paso 2001, no pet.) (reforming order requiring party to pay for drug and alcohol testing given "the absence of any evidence of drug abuse"). We conclude that the district court's final orders were supported by sufficient evidence and did not constitute an abuse of its discretion. We overrule Young's third and fourth issues.

## CONCLUSION

We affirm the district court's April 4, 2024 Final Orders in Suit to Modify Parent-Child Relationship.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: February 28, 2025

15