**Affirmed and Opinion filed July 2, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00454-CV

---

## JUMANA M. BARABARAWI, Appellant

## V.

## MAHAER ABU RAYYAN, Appellee

---

**On Appeal from the 312th District Court
Harris County, Texas
Trial Court Cause No. 2009-74023**

---

## OPINION

The question in this case is whether the trial court properly exercised jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *See* Tex. Fam. Code §§ 152.001–.317. We conclude that it did and affirm the trial court's judgment.

# BACKGROUND

The parents in this child custody dispute are Jumana M. Barabarawi ("Mother") and Mahaer Abu Rayyan ("Father").[1] Both are United States citizens and practicing Muslims. In 2003, the couple traveled to the West Bank to be married in accordance with their religious customs. After the ceremony, they returned to Houston and conceived a son, who was born here in 2004.

The family returned to the West Bank in June 2007, shortly before the child turned three. Once overseas, Father divorced Mother in a Sharia court. Mother retained custody of the child, and Father returned to Houston by himself. According to Mother, Father obtained an order forbidding her from leaving the region without his permission. Mother testified that because of this order, she was turned away when she attempted her exit from the West Bank. With some help, Mother was eventually able to leave the region and fly back to the United States with her son. They resettled in Orlando, Florida in July 2009.

Father learned that Mother and child had been living in Florida less than four months after their return. In November 2009, Father filed suit in Texas state court, seeking primary custody of his son. Mother disputed whether the trial court had jurisdiction. In the alternative, she also argued that the trial court should decline jurisdiction because Texas is an inconvenient forum and because Father engaged in unjustifiable conduct. The trial court rejected Mother's challenges and determined that it had jurisdiction under a default provision in the UCCJEA. After a trial on the merits, the trial court named both parents as joint managing conservators. Father received primary custody of the child and Mother was ordered to pay child support. This appeal ensued.

---

[1] We adopt the spelling used in the Notice of Appeal. We note, however, that Mother's name is more frequently spelled in the record as either "Barbarwi" or "Barbarawi."

## PARTIAL REPORTER'S RECORD

Before proceeding to the merits of this case, we first address Father's objection that Mother failed to comply with the Texas Rules of Appellate Procedure. The objection pertains to Mother's designation of a partial reporter's record. Under Rule 34.6, when the appellant requests a partial record, she "must include in the request a statement of the points or issues to be presented on appeal." *See* Tex. R. App. P. 34.6(c)(1). The rule states further that we, as the reviewing court, must presume that the partial record designated by the appellant "constitutes the entire record for purposes of reviewing the stated points or issues." *See* Tex. R. App. P. 34.6(c)(4). In this case, Mother requested the transcripts from two pretrial hearings, but not the trial itself. Father contends that the presumption of completeness should not apply because Mother entirely neglected to file a statement of points or issues. Father argues next that we should uphold the trial court's exercise of jurisdiction, citing the common law presumption that all omitted portions from the record support the trial court's judgment. *See W&F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 38 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Mason v. Our Lady Star of Sea Catholic Church*, 154 S.W.3d 816, 819 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Father misstates the record when he asserts that Mother "did not produce a statement of issues." After filing her Notice of Appeal, Mother sent a letter to Father and this court "to clarify [her] position regarding [her] request for the court reporter's transcript." In her letter, Mother stated that she had not requested the transcript from the trial on the merits because she was "only appealing jurisdictional issues which were considered prior to trial." This letter completely apprised Father of the points or issues Mother was raising on appeal.

To comply with the rest of Rule 34.6, Mother was also required to file her statement of issues "[a]t or before the time for perfecting the appeal." *See* Tex. R. App. P. 34.6(b)(1). Mother submitted her letter approximately one month after filing her Notice of Appeal. Although the statement was untimely, Mother's tardiness does not necessarily foreclose appellate review. In *Bennett v. Cochran*, the supreme court held that when a statement of issues is filed late, courts should not apply Rule 34.6 to deny review on the merits unless the appellee has established that he was harmed by the untimely statement. *See Bennett v. Cochran*, 96 S.W.3d 227, 229–30 (Tex. 2002) (per curiam) (reiterating the "commitment to ensuring that courts do not unfairly apply the rules of appellate procedure to avoid addressing a party's meritorious claim"). The supreme court "relaxed" the rules in that case because the appellee did not allege that he was deprived of an opportunity to designate additional portions of the record, nor did he assert that he was otherwise prejudiced in the preparation and presentation of his case. *Id.*

Citing *Bennett*, Father alleges that he was harmed by Mother's untimely statement. Without referencing any particulars, Father generally complains that he was deprived of an opportunity to supplement the record and to adequately prepare his case. The record does not support either allegation. Mother submitted her letter in July 2012, nearly three months before the partial reporter's record was filed in this court. Father objected to the incomplete record in September 2012, and he filed a letter stating his intent to order a partial trial transcript. *See* Tex. R. App. P. 34.6(d) (permitting any party to supplement the record with omitted items). Father never supplemented the record as he had stated. Instead, he requested two extensions to file his brief, which was not filed in this court until March 2013. Father never complained about the partial record in either of his motions to extend time. There is nothing to suggest that he was actually prejudiced by any delay

4

caused in ordering a partial record. *Cf. Bennett*, 96 S.W.3d at 229 (concluding that appellate review was not precluded where statement of issues was filed two months late and where appellee had more than two months after receiving notice of the statement to file his appellate brief). We overrule Father's objection.

## JURISDICTION UNDER THE UCCJEA

In her first issue, Mother challenges the trial court's exercise of subject matter jurisdiction. Because jurisdiction is a question of law, our review is de novo. *See Powell v. Stover*, 165 S.W.3d 322, 325 (Tex. 2005).

The trial court's jurisdiction is governed by the UCCJEA, a uniform act that has been adopted in both Texas and Florida. Under the UCCJEA, the trial court has jurisdiction to make an initial child custody determination only if one of these four exclusive bases of jurisdiction applies:

> (1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>
> (2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:
>
>> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
>>
>> (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
>
> (3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

Tex. Fam. Code § 152.201; *see also id.* § 152.204 (providing an exception, not applicable here, for temporary emergency jurisdiction).

The priority basis is known as home state jurisdiction. *See id.* § 152.201(a)(1). As to a child six months of age or older, a state qualifies as a home state if the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *See id.* § 152.102(7). Generally, if a child has a home state, the custody action must be filed there. If no home state exists, the forum state may exercise this priority jurisdiction only if, in the preceding six months, the forum state was the child's home state and a parent or a person acting as a parent continues to reside there. *See id.* § 152.201(a)(1).

Courts refer to the second jurisdictional basis as "significant connection jurisdiction." *See, e.g.*, *In re Brown*, 203 S.W.3d 888, 894 (Tex. App.—Fort Worth 2006, no pet.); *In re Brilliant*, 86 S.W.3d 680, 686 (Tex. App.—El Paso 2002, no pet.). This basis applies only if no other state can exercise home state jurisdiction, or if the state that can exercise home state jurisdiction has declined jurisdiction for other specified reasons. *See* Tex. Fam. Code § 152.201(a)(2). For the forum state to exercise jurisdiction under this basis, the child and at least one parent or a person acting as a parent must have a significant connection with the forum state beyond mere physical presence, and substantial evidence must be available in the forum state regarding the child's care, protection, training, and personal relationships. *Id.*

The third basis permits the forum state to exercise jurisdiction if all states having home state or significant connection jurisdiction decline their jurisdiction

6

because such state is an inconvenient forum and the forum state is the more appropriate forum, or because a person seeking to invoke that state court's jurisdiction has engaged in unjustifiable conduct. *See id.* § 152.201(a)(3).

The fourth basis is jurisdiction by default, and applies when no court of any other state would have jurisdiction under the three previously described bases. *See id.* § 152.201(a)(4). Personal jurisdiction over a party or child is not necessary to make a child custody determination under this or any of the four described bases. *See id.* § 152.201(c).

In this case, after considering the evidence presented at a pretrial hearing, the trial court determined that it should exercise default jurisdiction under Section 152.201(a)(4). On appeal, it is unclear whether Mother urges that the trial court erred in its implicit determination that Section 152.201(a)(3) does not apply because Florida is not the child's home state under a subdivision (1) analysis, or because Florida does not have a significant connection under a subdivision (2) analysis. We address both.

Mother argues in her brief that Father "failed to allege or plead any facts that Florida or some other state lacked home-state jurisdiction." However, during their first pretrial hearing, the parties seemed to agree that the child had no home state when Father first filed his suit. The child had roots only in Texas, Florida, and the West Bank, and none was capable of exercising home state jurisdiction. *See id.* § 152.105 (providing that foreign countries must be treated as states for purposes of applying the UCCJEA).[2] At the time of suit, the child had not been to Texas for more than two years, and he had only been living in Florida for less than four months. *See In re Forlenza*, 140 S.W.3d 373, 376 (Tex. 2004) (orig. proceeding)

---

[2] The status of the West Bank is disputed. We presume for the purposes of our analysis that the West Bank is located in a foreign country and is treated as a state under the UCCJEA.

(providing that jurisdiction is determined at the time suit is filed). Based solely upon these time periods, neither Texas nor Florida could qualify as a home state. *See* Tex. Fam. Code § 152.102(7). Furthermore, although the child had a home state in the West Bank six months before the time of commencement, the West Bank could not assume priority jurisdiction because no member of the immediate family continued to live there. *See id.* § 152.201(a)(1). Therefore, the trial court correctly determined that no state could exercise home state jurisdiction.

In the absence of a home state, Father argued that Texas qualified as a state with significant connections. Father cited evidence showing that the parties lived in Texas as husband and wife. They also conceived their child in Texas, who was born and raised here until nearly three years of age. The trial court rejected Father's argument and determined that the child no longer had a significant connection with Texas, presumably because of his extended absence from the state.

Mother urges next that Father failed to produce evidence regarding the child's connections with Florida. She contends that before the trial court could exercise default jurisdiction, Father needed to demonstrate that Florida was not a state with significant connection jurisdiction. However, the trial court did have evidence of the child's connection with Florida. The trial court heard from Mother that the child had been living there continuously since their return from the West Bank; at the time of the hearing, the child had been in Florida for just short of six months. The trial court also heard that Mother had sought Medicaid in Florida, and that the Florida Attorney General had filed a lawsuit against Father for the provision of child support.

The trial court did not, however, hear more pertinent evidence regarding the nature and quality of the child's contacts in Florida. There was no evidence, for instance, that the child had enrolled in preschool in Florida, or that Mother had

8

planned for the child's future education in Florida. *See In re S.J.A.*, 272 S.W.3d 678, 685 (Tex. App.—Dallas 2008, no pet.) (concluding that forum state had significant connections with the child where such evidence was available). The trial court also did not hear that the child was subject to any protection orders in Florida, or that he had any other family or friends in Florida besides Mother. *See Brown*, 203 S.W.3d at 894 (concluding that foreign state had significant connections because, among other things, the child's mother, grandmother, and pediatrician lived there). Mother invites us to reasonably presume that "much more evidence" was available in Florida regarding the child's care and personal relationships and that Father's failure to refute such unadduced evidence is a failure of proof. Mother bases this position on "the undisputed fact that the child had been absent from Texas for such a long period of time, and had been a resident in the state of Florida nearly long enough to establish Florida as his home state." We decline to indulge this "close enough to six months" presumption. The evidence adduced at the pretrial hearing showed little more than that the child was physically present in Florida, and presence alone is not sufficient under the statute. *See* Tex. Fam. Code § 152.201(a)(2)(A).

There is no question that Father had the burden to establish the trial court's jurisdiction. *See In re Oates*, 104 S.W.3d 571, 575 (Tex. App.—El Paso 2003, no pet.). Thus, if the record before us contained no evidence of the child's connection to Florida, we would face a more challenging question. Here, however, the trial court heard evidence about the child's Florida connection. From that evidence, the trial judge expressly found that the proof did not meet the criteria specified for a state to exercise significant connection jurisdiction. *See* Tex. Fam. Code § 152.201(a)(4) (providing that a court may exercise default jurisdiction if "no court of any other state would have jurisdiction under the criteria specified in

Subdivision (1), (2), or (3)"). Based on the evidence before the trial court, we conclude that the trial court did not err in concluding that neither Texas nor Florida would have significant connection jurisdiction.

Because no state would have home state or significant connection jurisdiction at the time of suit, the third jurisdictional basis would not apply. Jurisdiction cannot be declined if it does not exist.[3] Where the first three bases for jurisdiction are not present, jurisdiction by default remains. *See id*. The UCCJEA requires that some forum must be available to make a child custody determination. We conclude that the trial court did not err by exercising this default jurisdiction. Accordingly, we overrule Mother's first issue.

### INCONVENIENT FORUM

In her second issue, Mother argues that the trial court should have declined jurisdiction under section 152.207 of the Texas Family Code. This provision states that the trial court "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." *See id.* § 152.207(a). As stated by the Texas Supreme Court, Section 152.207 provides "flexibility" during the adjudicative process, and is intended to "avert potential injustice" once the trial court has determined that it has jurisdiction over the case. *See Powell*, 165 S.W.3d at 327. We review the trial court's decision on this issue for an abuse of discretion.

---

[3] We note that jurisdiction was declined in Florida during the course of the proceedings, but not at a time that is pertinent to our analysis. The record reflects that Mother filed a custody action in Florida sometime during the summer of 2010, after the child had been living there long enough to establish Florida as his home state. By that time, the Texas court had already taken jurisdiction over the case and entered temporary orders granting Father's visitation with the child. The Florida court consulted with the Texas court about the exercise of jurisdiction, as required by the UCCJEA. *See* Tex. Fam. Code §§ 152.110, 152.206. In October 2010, nearly eleven months after Father commenced suit in Texas, the Florida court ordered the dismissal of Mother's petition because it determined that Texas was the more appropriate forum.

*See In re Alanis*, 350 S.W.3d 322, 326 (Tex. App.—San Antonio 2011, orig. proceeding).

The trial court may consider any relevant factor when deciding whether to decline jurisdiction for inconvenient forum. Among the factors that should be weighed, the UCCJEA specifically enumerates the following:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this state;

(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

*See* Tex. Fam. Code § 152.207(b).

Mother did not cite any specific reason in her motion explaining why the trial court should decline jurisdiction for inconvenient forum. Her main argument during the hearing seems to be that Florida was a more appropriate forum because both Mother and child had been living there for several months. Mother also suggested that traveling to Texas is unduly burdensome because she, as a drugstore clerk, has less financial resources than Father, who is a public school teacher. The

11

trial court was not convinced by this argument, and even noted that traveling is "an expensive trip for either of them to make."

Mother also argues in her brief that "[e]vidence pertaining to the child's environment, schooling, medical treatment, and personal relationships was all available and accessible in Florida, while none was available in Texas." This argument lacks record support. No testimony was heard during the pretrial hearings regarding the child's environment, schooling, or medical treatments. Furthermore, the trial court heard limited testimony regarding the child's extended relations, the scope of which was merely that Mother had family in Chicago, and that Father's family lived in the West Bank. There was no evidence that the child had a personal relationship in Florida with any person other than Mother.

Mother contends that this case is similar to *In re Alanis*, a modification case holding that a Texas court should have declined jurisdiction where both the child and the custodial parent lived in California. *See Alanis*, 350 S.W.3d at 328–29. We disagree that *Alanis* is controlling because it was decided on a very different set of facts. In that case, nobody lived in the forum state: the mother resided in Oklahoma; and at the time of suit, the father and child had very recently left Texas. *Id.* at 327. Although Texas could have exercised default jurisdiction over the case, there were many probative factors showing that Texas was not a convenient forum. The record showed that the mother was a very high earner who could easily bear the costs of traveling. It was also undisputed that if the child were forced to attend hearings in Texas, he would miss high school and be unable to participate in extracurricular activities. This was considered undesirable because the mother had already revealed that she traveled weekly to California on business. The father also indicated that he had family and other witnesses who could testify on his behalf in California. The mother, by contrast, did not intend to rely on any witnesses who

12

lived in Texas. Her only argument in favor of a Texas forum was that her home in Oklahoma was closer to Texas than to California. *Id.*

The record in this case does not disclose any compelling reason why Texas is a more appropriate forum than Florida, or vice versa. The child's association with both states appears to have been slight, but unlike in *Alanis*, the child at least had one parent who continuously lived in the forum state. Mother was clearly in the better position to show why Florida should decide the case; having raised the child since birth, she had greater and more meaningful access to the evidence relevant to the custody determination. However, Mother did not present any such evidence to the trial court, at least on the partial record before us. Based on the evidence and arguments that were made to the trial court, we conclude that there was no abuse of discretion in the trial court's failing to decline jurisdiction for inconvenient forum. We overrule Mother's second issue.

## UNJUSTIFIABLE CONDUCT

In her third issue, Mother argues that the trial court should have declined jurisdiction because Father had engaged in unjustifiable conduct. Mother contends that Father acted in a reprehensible manner when he divorced her overseas then prohibited her from leaving the West Bank without his permission. She claims this conduct "literally imprisoned [her] and the child in a third-world, impoverished territory subject to constant violence," and that she was "only able to escape this imprisonment after several unsuccessful attempts, and then only with the aid of the Israeli government."

Mother's argument invokes Section 152.208, which states that a court must decline jurisdiction if it determines that it has jurisdiction under the UCCJEA "because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct." *See* Tex. Fam. Code § 152.208. The drafters of this statute were

concerned with parents who behaved reprehensibly for the purpose of establishing jurisdiction in a desired state. *See* Commissioners' Office Comment to UCCJEA Section 208 (targeting parents who abduct, secrete, retain, or restrain their children for legal advantage), *reprinted in* Sampson and Tindall's Texas Family Code Annotated § 152.208 (2011 ed.). Subject to certain exceptions, Section 152.208 prevents these parents from receiving any sort of benefit under the UCCJEA. *See, e.g.*, *In re Lewin*, 149 S.W.3d 727, 740 (Tex. App.—Austin 2004, orig. proceeding) ("To allow a parent to deliberately secrete a child to Texas for the purpose of obtaining a child custody determination in the state would make a mockery of the statute.").

During the pretrial hearings, Father denied any role in restricting Mother's movements inside the West Bank. Even if we accepted Mother's allegations as true, there is no evidence suggesting that Father engaged in such conduct for the purpose of invoking jurisdiction in Texas. Indeed, we do not perceive how Father could have obtained any legal advantage by divorcing Mother overseas and leaving his son behind. The conduct alleged does not fall within the scope of the statute. We overrule Mother's third issue.

## SANCTIONS

We finally address Father's request for appellate sanctions. Father contends that Mother's appeal is meritless and improper because her arguments depend on knowing misrepresentations of fact. Father focuses primarily on alleged misrepresentations in Mother's brief describing the hardship she endured while in the West Bank. Disputing the veracity of such statements, Father contends that "a multiple of evidence was presented at trial which directly contradicts [Mother's] assertion." Of course, without findings of fact and a record from the trial, we have no way of determining whether Mother's representations are accurate.

14

Father objects to other statements in the brief where Mother criticizes the trial court's exercise of jurisdiction. The statements targeted by Father follow basic models of advocacy: e.g., "There was absolutely no evidence introduced, admitted, or considered by the trial court which would have allowed it to come to that conclusion." Other statements of which Father complains, such as whether a child support action had been initiated against him in Florida, are plainly supported by Mother's testimony during the pretrial hearing. We reject Father's argument that Mother is deserving of sanctions.

## CONCLUSION

The judgment of the trial court is affirmed.

/s/    Sharon McCally
Justice

Panel consists of Justices Frost, McCally, and Donovan.