

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-16-00386-CV

_____

C.H., Appellant

V.

S.L., Appellee

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-578634-15

Before Walker and Pittman, JJ.; and Charles Bleil (Senior Justice, Retired, Sitting by Assignment).
Memorandum Opinion by Justice Pittman

# MEMORANDUM OPINION

In this appeal arising out of a divorce decree's child-custody provisions concerning C.H. (Mother) and S.L.'s (Father) daughter, A.S., Mother raises four issues: (1) the trial court lacked subject-matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA); (2) if the trial court did have jurisdiction under UCCJEA, the trial court abused its discretion by failing to decline jurisdiction and to transfer the case to a more convenient forum; (3) the trial court erred in entering a default judgment and denying Mother a new trial because Mother did not receive notice of the trial setting; and (4) the trial court's custody order is not supported by legally or factually sufficient evidence. We will affirm.

## BACKGROUND

### I. Factual Background

Mother and Father were married in Karachi, Pakistan, in January 2008. A.S. was born in Minnesota in 2008.[1] Sadly, A.S. was born with several health complications, which include Joubert Syndrome[2] and nephronophthisis. Due to these conditions, A.S. has required "significant" and "constant" medical care:

---

[1]Mother actually testified at the venue hearing that A.S. "came to Minnesota when she was two months old and has been living here since that time."

[2]Joubert Syndrome is a rare brain malformation causing mental and physical development abnormalities. *See Joubert Syndrome*, CLEVELAND CLINIC (Jan. 21, 2016), https://my.clevelandclinic.org/health/articles/6040-joubert-syndrome (last visited Sept. 27, 2018).

- A.S. has been a patient at Mayo Clinic in Rochester, Minnesota since she was a toddler where she receives regular treatment and testing;

- A.S. is a candidate for a kidney transplant;

- A.S. has been a regular patient of the Noran Neurological Clinic in Minneapolis, Minnesota, where she receives regular tests and exams;

- A.S. also receives a variety of therapy services from the Courage Center in Golden Valley, Minnesota; and

- A.S. receives orthopedic treatment at the Shriners Hospital for Children in Saint Paul, Minnesota, and eye examinations from the University of Minnesota Medical Center.

Mother asserts that Father physically abandoned her and A.S. in 2013 when he moved from Minnesota to Texas, and thereafter never contacted or attempted to contact A.S. However, at the end of 2014, Mother and A.S. came to Texas to move in with Father in hopes of reconciliation.

## II.    Procedural Background

Reconciliation never occurred, and on July 1, 2015, Father filed a petition for divorce in Tarrant County, Texas. Around this time, Mother and A.S. moved back to Minnesota. Father's petition stated that the court had jurisdiction over the divorce because Father and Mother had lived in Tarrant County for the last 90 days and were residents of Texas for the previous six months.

Mother filed a pro se answer and attached a UCCJEA affidavit in which she swore that A.S.'s place of residence for the previous five years was in Minnesota.

3

Mother also filed a motion to dismiss and alternatively a motion to transfer venue because Texas was an inconvenient forum.

## A. Change-of-Venue Hearing

On November 9, 2015, the trial court conducted a hearing on Mother's motion to dismiss or transfer. Father appeared in person at the hearing with his counsel and Mother appeared pro se over the telephone from St. Paul, Minnesota. During the hearing, the trial court asked Mother whether she had ever lived in Texas:

THE COURT:    Okay. So have you ever lived in Texas?

[MOTHER]:    Yes, I did.

THE COURT:    And how long ago did you do that?

[MOTHER]:    It was – it was only for a period of three months on and off, back and forth between Minnesota and Texas. And I would say in July.

THE COURT:    Of what year?

[MOTHER]:    This year.

THE COURT:    Okay. So for a few months off and on in 2015?

[MOTHER]:    Yes, Your Honor.

Mother testified that in about December 2014, she moved to Texas with A.S., during which time they lived with Father. Mother conceded in her motion to dismiss that she and A.S. were in Texas from December 20, 2014, to January 5, 2015; from February 20, 2015, to March 15, 2015; from March 21, 2015, to April 25, 2015; and from May 8, 2015, to July 1, 2015. In her UCCJEA affidavit, Mother provided four

4

different addresses where A.S. had lived in the previous five years, all of which were Minnesota addresses.

On cross-examination, Mother testified that she had in fact lived in Texas, obtained a Texas driver's license, entered into a lease agreement with an apartment complex, enrolled A.S. in a Texas school, and regularly brought A.S. to visit Texas doctors. Mother also acknowledged that she had been convicted of "lying to the police." Finally, Mother testified that she had only moved back to Minnesota *after* Father had filed the underlying petition for divorce and that she had intentionally avoided service of the divorce petition.

At the conclusion of the hearing, the trial court stated that it would deny Mother's motion to dismiss or transfer. Then on the record, the parties discussed a scheduling order, which included mediation, to govern the proceedings of the case. Mother stated that she understood the scheduling order. Before going off the record, the trial court explained that the court coordinator would contact Mother to discuss a trial setting.

On October 28, 2015, the trial court entered a scheduling order. On May 24, 2016, Father's counsel filed a notice of service providing that the scheduling order, which had a May 26, 2016 trial date, had been sent by U.S. mail to Mother's last-known address.

**B.    Default-Divorce Hearing**

On May 26, 2016, the trial court held a default-divorce hearing.  Father's counsel informed the trial court that after Father and Mother participated in mediation, Mother filed her own petition in Minnesota to decide the issue of custody of A.S.  Father's counsel stated that Father appeared before the Minnesota court over the phone and explained that the instant divorce petition was pending in Texas, so the Minnesota court continued its hearing.

Father's counsel further asserted that "[Mother] is nowhere to be found.  She knows about today's hearing.  She's been served.  She has a scheduling order, but she has not shown up, so we will be seeking a default specifically for the divorce, Your Honor . . . ."  Before proceeding with the default divorce prove-up, the bailiff confirmed that he had called Mother's name in the hallway and received no response.  The trial court also confirmed with the court coordinator that Mother had not communicated with the coordinator.  Before proceeding with the divorce hearing, the trial court again inquired whether Mother had notice of the divorce hearing:

> THE COURT:    How about you guys?  Have you heard anything?
>
> [COUNSEL]:    No, Your Honor.  The only thing that I've -- I can update the Court about is she has a Minnesota lawyer and a Minnesota file.  Nothing in Texas.  And, Your Honor, she is aware that, to the best of my knowledge, that today is her trial date, Your Honor.
>
> THE COURT:    All righty.  Having taken judicial notice of the file, it shows today is the trial date.  I'm going to go ahead

6

and also find that she's in default, and you may proceed. Did you send her notice, too, on top of everything else?

[COUNSEL]: Your Honor, I sent the scheduling order. But, Your Honor, on the 24th itself, this was discussed in open court in Minnesota where her -- herself and her lawyer were made aware of today as well, again, so that's one of the reasons the judge continued to June 1st, Your Honor.

Father then stated under oath that he had served Mother with the divorce petition.

Father also testified that he was asking the court to make him A.S.'s joint managing conservator. Father stated that he had no objection to A.S. living in Minnesota but that he did want a visitation schedule. Father then listed a litany of requests concerning visitation dates, times, and conditions. The trial court granted the divorce and all of Father's requested relief.

On July 13, 2016, the trial court rendered a final decree of divorce that stated Mother had notice but failed to appear and included a determination of conservatorship of A.S. naming Mother and Father as joint managing conservators. According to the divorce decree, Mother was permitted to designate A.S.'s primary residence, but Mother could not change it unless she provided advance notice to Father. The divorce decree also ordered Mother to make A.S. available for weekly communications with Father—at least three times during the weekdays and at least twice on weekends. The divorce decree also attached standard possession orders for both Mother and Father.

7

On July 20, 2016, Mother filed a motion for new trial, alleging that she did not receive actual notice of the May 26, 2016 trial. On October 5, 2016, the trial court held a hearing on the motion for new trial. Mother appeared but did not present any testimony or evidence. The same day, the trial court overruled the motion for new trial. This appeal ensued.

## JURISDICTION UNDER THE UCCJEA

In her first issue, Mother asserts that the trial court erred in entering the divorce decree because it lacked jurisdiction to do so under the UCCJEA.

### I. Standard of Review and Applicable Law on Subject-Matter Jurisdiction

Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether undisputed evidence of jurisdictional facts established a trial court's jurisdiction is also a question of law. *Id.*; *City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 857 (Tex. App.—Fort Worth 2010, pet. denied). The question of subject-matter jurisdiction may be raised at any time, even for the first time on appeal, and may be raised by the court if not raised by the parties. *See Tex. Ass'n. of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

### II. Law Concerning UCCJEA

"The UCCJEA encourages national uniformity in child-custody disputes; the Act is an attempt to deal with the problems of competing jurisdictions entering conflicting interstate child-custody orders, forum shopping, and the drawn out and

8

complex child-custody legal proceedings often encountered by parties where multiple states are involved." *In Interest of T.B.*, 497 S.W.3d 640, 644–45 (Tex. App.—Fort Worth 2016, pet. denied). Texas has adopted the UCCJEA as the "exclusive jurisdictional basis for making a child-custody determination by a court of this state." *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 585 (Tex. App.—Dallas 2006, no pet.); *see also* Tex. Fam. Code Ann. § 152.201 (West 2014).

Located in Chapter 152 of the family code, the UCCJEA provides:

a court of this state has jurisdiction to make an initial child custody determination only if:

    (1)  this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

    (2)  a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

        (A)  the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

        (B)  substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

    (3)  all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to

> determine the custody of the child under Section 152.207 or 152.208; or
>
> (4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

Tex. Fam. Code Ann. § 152.201(a). Under the UCCJEA, the date for determining whether a Texas court has jurisdiction to make an initial determination in a child-custody action is the date the proceeding in Texas was commenced. *In re B.A.B.*, 124 S.W.3d 417, 419 (Tex. App.—Dallas 2004, no pet.).

Texas courts have read Section 152.201 as providing that in an initial child-custody determination, courts first look to the home state of the child and because the UCCJEA prioritizes home-state jurisdiction, if any state is deemed to be the child's home state, generally no other state may exercise jurisdiction to make an initial child-custody determination. *Powell v. Stover*, 165 S.W.3d 322, 327–28 (Tex. 2005).

## III. Analysis

### A. "Child-Custody Proceeding"

The threshold issue is whether the divorce decree arose out of a child-custody proceeding. At the venue hearing, the trial court appeared to agree with Father's argument that the divorce proceeding was not a child-custody proceeding subject to the UCCJEA because Father asserted he was only seeking visitation and not

attempting to alter conservatorship.[3]  To the extent the trial court denied Mother's motion to dismiss or transfer on this basis, we cannot agree.

The UCCJEA defines a "child custody proceeding" as "a proceeding in which legal custody, physical custody, *or visitation* with respect to a child is an issue.  The term includes a proceeding for divorce."  Tex. Fam. Code Ann. § 152.102(4) (West 2014) (emphasis added).  A cursory examination of Father's original petition for divorce reveals that Father originally sought to be appointed sole managing conservator of the child, as well as a standard visitation and access schedule under the family code.  And, although Father appeared to change course at the venue hearing, at which he indicated that he was only seeking visitation and not to alter conservatorship,[4] under

---

[3]THE COURT:  Well, how can you make the same argument if it's not a custody case?

[MOTHER]:  Because he's asking for – even if it's not custody, for visitation or whatever.  I'm not okay with that.

THE COURT:  Did you read 152.207?  That's all I'm asking.

[MOTHER]:  Okay.  If it's regarding this case, yes, I did.  And then it doesn't apply.

THE COURT:  All of the sections that you are talking about apply if custody is an issue.  So my question to you is if custody is not on the table and he is not contesting custody, is there another section that you want to refer to in making this argument of convenience or inconvenience?

[4][COUNSEL]:  And do you know that he's not asked for custody; he's asked for visitation?  Are you aware of that?

[MOTHER]:  Yes, I'm aware of that.

11

the plain, unambiguous language of the UCCJEA, such a request for visitation still falls within the UCCJEA's definition of a child-custody proceeding. *See id.* Indeed, the final decree of divorce named Father and Mother as joint managing conservators.

Therefore, the underlying divorce proceeding is a child-custody proceeding as defined by the UCCJEA; thus, the requisites of the UCCJEA must have been satisfied for the trial court to exercise subject-matter jurisdiction over the child-custody provisions of the divorce decree.

## B.     A.S.'s Home State

Mother's argument is straightforward: Texas was never the home state of A.S.,[5] so the trial court did not have subject-matter jurisdiction over the child-custody portion of the divorce proceeding.

The UCCJEA defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7). In analyzing a child's home-state status under the UCCJEA, the Supreme Court of Texas has rejected a parent's subjective-intent test. *Powell*, 165 S.W.3d at 326. Thus,

---

[5]In attempting to argue that Minnesota is A.S.'s home state, Mother immediately conceded that "Minnesota was not the home state of A.S. on the date this action was filed, July 1, 2015, because she did live in Texas for some periods in early 2015. . . . Her short period of living in Texas prevents Minnesota from being her home state on the date of commencement of th[is] action." Because home-state jurisdiction is determined on the date the proceeding in Texas was commenced, *In re B.A.B.*, 124 S.W.3d at 419, we agree with Mother that Minnesota was not A.S.'s home state for purposes of this appeal.

Mother's or Father's subjective intent regarding A.S.'s home state is not relevant to our analysis. *See id.* Instead, the determination is based on where the child lived, and the child's physical presence is the "central factor" in making this determination. *Id.* at 328 ("We therefore hold that in determining where a child lived for purposes of establishing home-state jurisdiction, the trial court must consider the child's physical presence in a state."). Courts also consider the nature and quality of the child's contacts with Texas. *See In re T.B.*, 497 S.W.3d at 645.

Based on our de novo review, we hold that the trial court did not err by concluding that it had home-state jurisdiction. At the venue hearing, Mother testified that she and A.S. only visited Texas for a few months on-and-off in 2015, but that Texas was never A.S.'s home state. However, Mother's subjective intent is not relevant in determining A.S.'s home state. *See Powell*, 165 S.W.3d at 326. The trial court received evidence that: (1) Mother had a Texas driver's license; (2) A.S. first moved to Texas with Mother in December of 2014; (3) A.S. lived in Texas in an apartment with Mother and Father and that Mother had signed a lease agreement for the apartment; (4) A.S. was enrolled in a Texas school as of April 7, 2015; (5) A.S. was seeing doctors in Texas; and (6) Mother and A.S. had not moved back to Minnesota until after Father had filed the underlying petition for divorce on July 1, 2015.

Therefore, because A.S. had a physical presence in Texas for six consecutive months—from December 2014 through July 1, 2015—at the time Father filed his petition for divorce and because A.S. was enrolled in a Texas school, we hold Texas

13

has home-state jurisdiction. *See B.A.B.*, 124 S.W.3d at 419 (concluding Texas court had jurisdiction under the UCCJEA by examining facts as of the date the proceeding commenced); *T.B.*, 497 S.W.3d at 646 (listing state where child attends school as a factor in making an initial custody determination).

## C.  Significant-Connection Jurisdiction

Mother argues in the alternative that A.S. does not have a significant connection to Texas. However, significant-connection jurisdiction under the UCCJEA is only at issue when the child has no home state. *See In re Oates*, 104 S.W.3d 571, 578 (Tex. App.—El Paso 2003, no pet.) ("Significant connection jurisdiction should be employed only when Texas is not the home state and it appears that no other state could assert home state jurisdiction."); *In re E.K.N.*, 24 S.W.3d 586, 591, 592 (Tex. App.—Fort Worth 2000, no pet.) ("In Texas, home state jurisdiction prevails over significant connection jurisdiction. . . . Therefore, significant connection jurisdiction should be employed only in those instances where Texas is not the home state and it appears that no other state could assert home state jurisdiction."). Here, because we held above that Texas has home-state jurisdiction, the UCCJEA's significant-connection jurisdiction is not applicable. *See id.* We overrule Mother's first issue.

## TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO DECLINE JURISDICTION

In her second issue, Mother contends that even if Texas had home-state jurisdiction, the trial court should have declined to exercise jurisdiction to make a decree because Minnesota is a more convenient forum.

## I. Applicable Law and Standard of Review

The Supreme Court of Texas has recognized that section 152.207 of the family code provides "flexibility" during the adjudicative process and is intended to "avert potential injustice" once the trial court has determined that it has jurisdiction over the case. *Powell*, 165 S.W.3d at 327; *see also* Tex. Fam. Code Ann. § 152.207 (West 2014). Thus, a Texas court that has home-state jurisdiction under the UCCJEA to make an initial child-custody determination may nevertheless decline to exercise its jurisdiction any time before making such a determination if it finds that it is an inconvenient forum to make a child-custody determination under the circumstances and that a court of another state would be a more appropriate forum. *See* Tex. Fam. Code Ann. § 152.207(a); *Powell*, 165 S.W.3d at 328.

"The trial court may consider any relevant factor when deciding whether to decline jurisdiction for inconvenient forum." *Barabarawi v. Rayyan*, 406 S.W.3d 767, 774 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Among the nonexclusive factors that should be weighed, the UCCJEA specifically enumerates the following:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this state;

(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

*See* Tex. Fam. Code Ann. § 152.207(b).

A trial court's decision under Section 152.207 is reviewed for an abuse of discretion. *Barabarawi*, 406 S.W.3d at 774. A trial court abuses its discretion if it fails to analyze or apply the law correctly. *Powell*, 165 S.W.3d at 324.

## II. Analysis

The evidence at the venue hearing demonstrated that A.S. and Mother lived and had a physical presence in Texas for six consecutive months prior to Father filing the divorce petition; in fact, Mother left Texas and intentionally evaded service of process following the filing of the divorce petition, kept a storage unit in Texas, and attended the venue hearing telephonically. Yet Mother cites comments from the trial

16

court to support her argument that the court misunderstood the law and that the trial court's decision would have been different had it properly understood the law. However, a trial court has discretion over the conduct of a hearing, which includes the authority to express itself in exercising this broad discretion. *In re J.W.G.*, No. 14-17-00389-CV, 2017 WL 5196223, at \*5 (Tex. App.—Houston [14th Dist.] Nov. 9, 2017, pet. denied) (mem. op.). Thus, we decline to treat a trial court's comments made as part of its judicial function as testimonial evidence to consider in our analysis. *See id.*

The case Mother cited in support of reversal is factually distinguishable because it involved "an unusual situation in which neither parent nor the child resides in Texas, yet one parent is pursuing a modification suit here." *In re Alanis*, 350 S.W.3d 322, 327 (Tex. App.—San Antonio 2011, orig. proceeding). Unlike this case, in *Alanis* there were no identified witnesses in Texas and the last action taken by a Texas court in the matter occurred almost a decade earlier. *See id.* at 327–28. These facts are certainly not present here as Father lived in Texas and would be a witness located in Texas. And at the time Father filed his petition for divorce, Mother and A.S. still resided in Texas. Indeed, Mother admitted to later leaving the state and avoiding service of process.

Therefore, we hold that the trial court did not abuse its discretion in retaining jurisdiction because Texas is a convenient forum. *See Barabarawi*, 406 S.W.3d at 775 (concluding that there was no abuse of discretion in the trial court's failing to decline jurisdiction under Section 152.207). We overrule Mother's second issue.

## DEFAULT JUDGMENT AND MOTHER'S MOTION FOR NEW TRIAL

In her third issue, Mother challenges the trial court's denial of her motion for new trial because she did not receive proper notice of the trial setting.

### I. Standard of Review and Applicable Law

We review a trial court's decision to overrule a motion to set aside a default judgment and grant a new trial for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009).

In *Craddock v. Sunshine Bus Lines, Inc.*, the Supreme Court of Texas established the three-factor test for setting aside a default judgment. 133 S.W.2d 124, 126 (Tex. 1939). Under the *Craddock* test, no-answer default judgments should be vacated and a new trial granted when the defaulting party establishes that (1) the failure to answer or to appear was not intentional or the result of conscious indifference but rather was due to a mistake or an accident; (2) the motion for a new trial sets up a meritorious defense; and (3) granting a new trial will not cause delay or work other injury to the prevailing party. *In re R.R.*, 209 S.W.3d 112, 114–15 (Tex. 2006); *Craddock*, 133 S.W.2d at 126. The Supreme Court of Texas has extended *Craddock* to post-answer default judgments. *Dolgencorp*, 288 S.W.3d at 926.

### II. Analysis

Mother's motion for new trial and argument were predicated on a lack of notice of the May 26, 2016 trial setting. Father concedes that "[t]he clerk's record contains no notice from the trial court or the clerk of the court to Appellant of the

trial setting." However, the divorce decree states, "Respondent, [Mother], had notice, but failed to appear." Mother's motion for new trial was unverified and attached no exhibits. Further, the record does not reflect that Mother presented evidence at the motion-for-new-trial hearing.

"When a party receives *no* notice of a trial setting, she satisfies the first prong of *Craddock* and need not meet the remaining two." *In re R.K.P.*, 417 S.W.3d 544, 551–52 (Tex. App.—El Paso 2013, no pet). To require otherwise would violate federal due-process rights under the Fourteenth Amendment to the United States Constitution. *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86–87, 108 S. Ct. 896, 900 (1988). But "[n]otice of a trial setting does not always appear in the clerk's record and need not affirmatively appear in the record as a whole." *In re Marriage of Parker*, 20 S.W.3d 812, 816 (Tex. App.—Texarkana 2000, no pet.). The law presumes that a trial court will hear a case only after giving proper notice to the parties. *Id.*; *Tex. Dep't of Pub. Safety v. Mendoza*, 956 S.W.2d 808, 812–13 (Tex. App.—Houston [14th Dist.] 1997, no pet.). Thus, in arguing a lack of notice, Mother was required to set forth evidence to rebut the presumption of notice based on the recital in the divorce decree. *Parker*, 20 S.W.3d at 816

Mother filed an unverified motion for new trial, attached no affidavit to her motion, and adduced no live testimony at the motion-for-new-trial hearing. As such, Mother failed to rebut the presumption that she received proper notice. Accordingly, we hold that the trial court did not abuse its discretion in overruling Mother's motion

19

for new trial. *See Dougherty-Williams v. Dougherty*, No. 01-13-01087-CV, 2014 WL 2809827, at *2 (Tex. App.—Houston [1st Dist.] June 19, 2014, no pet.) (overruling request to set aside default divorce decree because "the record from trial affirmatively demonstrates that [wife] was provided notice of the trial setting and nothing in the actual record supports [wife's] argument otherwise"); *Parker*, 20 S.W.3d at 816 (holding movant can and must present rebuttal evidence to overcome presumption of notice because "[a] recitation of due notice of the trial setting in the judgment constitutes some, but not conclusive, evidence that proper notice was given").

We overrule Mother's third issue.

## SUFFICIENCY CHALLENGE[6]

Mother's final issue challenges that the evidence before the trial court was legally and factually insufficient to support the custody order.

### I. Standard of Review

We review the trial court's order for child custody, control, possession, and access for an abuse of discretion. *In re T.D.C.*, 91 S.W.3d at 872; *In re K.R.*, No. 02-15-

---

[6]Although Mother attempts to raise a sufficiency challenge to the trial court's custody determination, legal and factual sufficiency are not independent grounds for challenging a custody order. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g). They are, however, factors to consider in determining whether the trial court abused its discretion—our standard for reviewing a custody order. *See id.* Therefore, we construe Mother's fourth issue as challenging the custody order for an abuse of discretion due to insufficient evidence. *See* Tex. R. App. P. 38.9.

00276-CV, 2016 WL 3198611, at *6 (Tex. App.—Fort Worth June 9, 2016, no pet.) (mem. op.). Generally, the trial court has the broad discretion to grant conservatorship to any party in a custody dispute so long as the award is in the best interest of the child. *Landry v. Nauls*, 831 S.W.2d 603, 604 (Tex. App.—Houston [14th Dist.] 1992, no writ). A trial court only abuses its discretion if it acts without reference to any guiding rules or principles, that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). And a trial court abuses its discretion if it fails to analyze the law correctly or misapplies the law to established facts. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

Legal and factual sufficiency are relevant factors to consider whether an abuse of discretion occurred. *T.D.C.*, 91 S.W.3d at 872. In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion. *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.); *In re W.M.*, 172 S.W.3d 718, 725 (Tex. App.—Fort Worth 2005, no pet.); *T.D.C.,* 91 S.W.3d at 872. "The traditional sufficiency review comes into play with regard to the first question. With regard to the second question, we determine, based on the elicited evidence, whether the trial court made a reasonable

21

decision." *Newell v. Newell*, 349 S.W.3d 717, 721 (Tex. App.—Fort Worth 2011, no pet.) (quoting *W.M.*, 172 S.W.3d at 725).

## II. Applicable Law

A court's primary consideration in determining the issues of conservatorship, possession, and access must always be the best interest of the child. Tex. Fam. Code Ann. § 153.002 (West 2014); *In re J.A.J.*, 243 S.W.3d 611, 614 (Tex. 2007); *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002); *Newell*, 349 S.W.3d at 721. Texas courts have applied what are commonly referred to as the *Holley* factors—a nonexhaustive list of considerations for determining a child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (enumerating list of factors to ascertain best interest of child in parental termination context); *T.D.C.*, 91 S.W.3d at 873. The family code creates a rebuttable presumption that the appointment of the child's parents as joint managing conservators is in the child's best interest. *In re G.B.*, No. 09-15-00285-CV, 2016 WL 157842, at *4 (Tex. App.—Beaumont Jan. 14, 2016, no pet.) (mem. op.) (citing Tex. Fam. Code Ann. § 153.131(b)). A party requesting to be appointed sole managing conservator of a child has the burden to rebut the statutory presumption that joint managing conservatorship would be in the best interest of the child. *Hinkle v. Hinkle*, 223 S.W.3d 773, 779 (Tex. App.—Dallas 2007, no pet.).

## III. Application of the Law to the Facts

The final divorce decree with its child-custody provisions was rendered following a default-divorce hearing. At the hearing, Father testified that he was asking

the court to appoint him as a joint managing conservator. The trial court named Father and Mother as A.S.'s joint managing conservators and attached standard possession orders. Although Father did not provide testimony specifically addressing the *Holley* factors, it is Mother's burden to rebut the statutory presumption that joint managing conservatorship would be in the best interest of A.S. Because she has failed to rebut this presumption, we hold that the trial court did not abuse its discretion in naming Father and Mother joint managing conservators. *See id.* at 782–83 (affirming award of joint managing conservators because mother failed to set forth sufficient evidence to overcome statutory presumption that joint managing conservators are in child's best interest).

We overrule Mother's fourth issue.

## **CONCLUSION**

Having held that the trial court had jurisdiction over the child-custody aspect of the underlying divorce suit, that the trial court did not err by not declining to exercise jurisdiction over the suit in favor of Minnesota as a more convenient forum, that the trial court did not err by denying Mother's motion for new trial, and that the trial court did not abuse its discretion by appointing Father and Mother as joint managing conservators and providing a standard possession order, we affirm.

23

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered:  October 11, 2018